## Mellon National Bank and Trust Company, Trustee, Appellant, *v.* Esler.

Argued October 2, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Edmund K. Trent,* with him *Reed, Smith, Shaw & McClay,* for appellant.

*J. Roy Dickie,* with him *H. A. Robinson* and *Dickie, Robinson & McCamey,* for appellee.

OPINION BY MR. JUSTICE DREW, November 10, 1947:

Mellon National Bank and Trust Company (formerly The Union Trust Company of Pittsburgh), as successor trustee under the will of James W. Esler, Deceased, brought this bill in equity to compel defendant, Russell J. Esler, brother of testator, to execute a deed conveying to it 1/24 interest in certain real estate claimed to be held upon a constructive trust. The property in question was formerly owned by Tarentum Opera Company, and consists of a piece of land in the Borough of Tarentum, Allegheny County, upon which is erected a moving picture theater. The learned chancellor, after hearing on bill and answer, dismissed the bill for the reason that no constructive trust arose in favor of plaintiff's decedent in the acquisition of this realty. Plaintiff's exceptions were dismissed and a final decree was entered by the court en banc affirming the chancellor's action. This appeal by plaintiff followed.

The following facts were found by the chancellor: James M. Esler, who died on November 21, 1920, bequeathed unto each of his two sons, James W. Esler

and Russell J. Esler, among other things, 87½ shares, or ⅛ of the capital stock of Tarentum Opera Company, and also ½ interest in a $7500 note of that corporation. At that time the remaining 525 shares, or ¾ of all the stock of the company, were owned in equal shares by John A. Bichtel, Edward H. Kennerdell and John Duster. Each of these three stockholders was also the owner of the corporation's note in the face amount of $7500. The four notes represented moneys which the corporation had borrowed previously from its shareholders.

On August 25, 1935, John Duster died and by his will he bequeathed his 175 shares, or ¼ of the company's stock, to The Union National Bank of Pittsburgh, in trust, for purposes not here pertinent. In March, 1937, that trustee entered into negotiations with defendant, who was then an officer of the Opera Company, relative to the sale of Duster's stock and note, which had been reduced by that time to $5000. The Opera Company's funds were then insufficient to make such a purchase, and defendant contacted all his fellow shareholders (i. e. Bechtel, Kennerdell and his brother, James W. Esler) to ascertain whether or not they desired to join with him in purchasing the Duster interest, individually and with moneys to be raised by each. All agreed to buy a proportionate share of this stock and note, with the exception of James W. Esler, who stated that he did not care so to invest. On May 8, 1937, defendant purchased the stock and note with his own funds and those turned over to him for that purpose by Bechtel and Kennerdell, and each of the three received 58⅓ shares of that stock and ⅓ interest in the note. After that purchase, the entire stock of the Opera Company was owned: Bechtel—⅓ or 233⅓ shares; Kennerdell—⅓ or 233⅓ shares; defendant—5/24 or 145-5/6 shares; and his brother, James W. Esler—⅛ or 87½ shares.

Pursuant to an agreement entered into by all the stockholders, the corporation was thereafter dissolved

in order to obtain certain tax benefits, and its assets and liabilities were divided among the stockholders in the same proportion as their former stock holdings. Consequently, the company's theatre property was conveyed by deed dated August 18, 1937, to Bechtel, Kennerdell, defendant and his brother, James W. Esler, as tenants in common, the undivided interests of these grantees being described as $\frac{1}{3}$, $\frac{1}{3}$, 5/24 and $\frac{1}{8}$, respectively. James W. Esler died on December 15, 1938, and by his will he devised and bequeathed so much of his real and personal property as he had received under the will of his father, James M. Esler, unto defendant and his sister, as trustees, upon certain trusts in no way associated with this controversy. These trustees later resigned and plaintiff was substituted as successor trustee.

This bill of complaint was filed to obtain a conveyance from defendant of 1/24 interest in the theater property (being $\frac{1}{2}$ of 1/12 interest which defendant acquired by purchase of $\frac{1}{3}$ of Duster's holdings). Plaintiff contends that the sale of the Duster stock and note was actually to the Opera Company, and not, as found by the chancellor, to Bechtel, Kennerdell and defendant, individually. It also argues, inter alia, that even if it was the actual intention to sell to these shareholders in their individual capacity, nevertheless, defendant, who was then acting for his brother in the management of the latter's share of property acquired from their father's estate, violated that confidential relationship by purchasing for himself the $\frac{1}{3}$ of the interest of Duster. It is the contention that in either event defendant holds $\frac{1}{2}$ of 1/12 of the theater property upon a constructive trust for plaintiff's decedent.

In *Gray v. Leibert*, 357 Pa. 130, 135, 53 A. 2d 132, quoting from Scott on Trusts, it was stated: "'. . . a constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to

another on the ground that he would be unjustly enriched if he were permitted to retain it.' " The record in the instant case is absolutely devoid of any evidence to show that there is any equitable duty upon defendant to convey any part of the theater property to plaintiff's decedent, and, therefore, the chancellor properly held that no constructive trust arose.

It clearly appears that the sale of Duster's stock and note was not made to the Opera Company, but rather to Bechtel, Kennerdell and defendant, individually. The evidence adduced shows that it was originally intended that the corporation should purchase the stock and note, but the original negotiations did not materialize. Negotiations were renewed early in 1937 by the trustee of Duster's estate, but by that time the Opera Company had no money with which to purchase the stock and note. James W. Esler was fully apprised of all details of the proposed purchase by defendant, and it was made clear to him that this was to be a purchase by all the shareholders, in their individual capacities, who wished to so participate. Although the record discloses convincing proof that James W. Esler had full knowledge of all the facts and although he lived for a period of some 19 months following the sale of the interest of Duster, yet no evidence was offered to show that he made any objection to the transaction.

It was admitted that for about four years prior to the death of James W. Esler, during which period he was living in Washington, D. C., defendant acted as his agent in the management of his brother's share of property acquired from the estate of their father. However, it is obvious that that agency had nothing whatever to do with the purchase of the Duster interest. The note and stock of Duster were not assets of the estate of the father of defendant and his brother. Defendant offered himself as agent for the purchase of that note and stock, but his offer was never accepted by his brother. In his

letter to defendant of April 29, 1937, James W. Esler specifically declined to participate in the proposed transaction, and, therefore, defendant never became his agent for the purchase of such holdings. That letter states: "I have been turning over the theater proposition in my mind since your last letter and was on the point of writing you concerning it. Weighing it from all angles, I believe I had better pass up the purchase of the sixth interest of the Duster share. I take it from the tone of your letters that in so doing I shall not be letting you down. If I had a thousand or two to invest at this time I certainly would take it as it looks to me like an unusually good gamble. . . . Under the circumstances therefore I do not feel that I should invest any money until I have accumulated some over and above my liquid reserve. In consideration of the business that the theater is now doing I believe that you folks are getting an unusually good buy."

Since defendant's letters to his brother contained no statement of the precise sum which was due at that time to his brother from their father's estate account, plaintiff contends that this is tantamount to a representation of lack of money, and that it was done deliberately so the brother would decline to participate in the transaction. We cannot agree with that argument. There was no obligation on defendant to find money for the brother to use in purchasing a proportionate share of Duster's stock and note. Particularly is that true, since the brother did not request him so to do.

We have carefully scrutinized the conduct of defendant and find that his entire relationship with his brother in this transaction was beyond reproach. We are convinced that all the assignments of error must be overruled and that the chancellor committed no error in dismissing the bill.

Decree affirmed.