SHIRLEY COHEN *v.* DONALD J. COHEN

COTTER, C. J., PETERS, HEALEY, PARSKEY and D. SHEA, Js.

Argued May 15—decision released August 19, 1980

*Sturges N. Laros,* for the appellant (defendant).

*Frank J. Hennessy,* for the appellee (plaintiff).

ARTHUR H. HEALEY, J.   The plaintiff, Shirley Cohen, brought this action seeking a reconveyance of an interest in a condominium located in Bridgeport that she conveyed to her son, the defendant Donald Cohen, under an alleged oral agreement pursuant to which he was to reconvey to his mother the interest he acquired at her request.  She claimed that the defendant obtained title from her by fraud, misrepresentation, and an abuse of the confidential relationship that existed between them, and sought to have the court impose a trust upon the interest conveyed and order a reconveyance to her.  The defendant denied the material allegations of the plaintiff's complaint and filed a counterclaim in which he alleged that he had an undivided one-half interest in the condominium and sought money damages from the plaintiff for her use and occupancy of the condominium after she allegedly excluded him from it.

The case was referred to a state referee, *Hon. Michael J. Sicilian,* who exercised the power of the Superior Court. See General Statutes § 52-434a. Upon application of one of the parties, the court ordered the issues of fact in the case to be tried to a jury of six persons. See General Statutes § 52-218 and Practice Book, 1978, § 307; *Burns* v. *Gould,* 172 Conn. 210, 211n, 374 A.2d 193 (1977). The jury returned a verdict for the plaintiff on the complaint and on the counterclaim. The court denied the defendant's motion to set aside the verdict and granted the equitable relief sought by the plaintiff.

On appeal the defendant directs three claims of error to the court's charge to the jury; the defendant also claims, essentially, that the trial court erred in concluding that the equitable doctrine of clean hands did not bar the plaintiff from obtaining the equitable relief sought.

At the outset, we note certain irregularities in the procedure employed by the trial court. We do so only because it is both necessary to our resolution of the issues presented and because our failure to do so might be interpreted as an implicit approval of the procedure employed. Although the defendant sought to have the court address interrogatories to the jury, the court declined to do so. By the defendant's failure to raise the court's refusal to direct interrogatories to the jury as an issue on appeal, the matter is not before us. We do point out, however, that in matters tried to a jury under General Statutes § 52-218 the specificity of the jury's factual conclusions afforded by the use of interrogatories is most helpful to the trial court and to this court. "Where, in an equitable proceeding, a trial by jury is had, a general verdict usually will not serve the purpose intended, which is to

inform the court as to facts upon which relief, if any, is to be granted. The proper course in most instances is to submit interrogatories covering only those issues upon which the court determines in its discretion the decision of the jury is appropriate and useful. If the answers of the jury are returned and accepted, the court determines any other issues necessary to a decision of the case and gives judgment accordingly." *Dzubin* v. *Dzubin,* 121 Conn. 646, 649, 186 A. 652 (1936) ; see *Finnegan* v. *LaFontaine,* 122 Conn. 561, 566–67, 191 A. 337 (1937). The failure of the court to address appropriate interrogatories to the jury does not prevent us from reaching the issues raised on this appeal, however. We presume that the jury resolved all issues of fact in a manner favorable to the plaintiff. See *Harry A. Finman & Son, Inc.* v. *Connecticut Truck & Trailer Service Co.,* 169 Conn. 407, 410–11, 363 A.2d 86 (1975).

It is also apparent from the record before us that the court instructed the jury not only on the factual issues in the case, but upon the equitable maxim of "clean hands" as well. It is clear that this equitable maxim is to be applied not by the jury but by the court in the exercise of its sound discretion. See *DeCecco* v. *Beach,* 174 Conn. 29, 35, 381 A.2d 543 (1977). Inasmuch as the maxim does require the resolution of certain factual issues, however, and the defendant has raised no claim of error with respect to the procedure employed by the court, we decide the appeal in the manner that it was presented to us.[1] See, e.g., *Machiz* v. *Homer*

---

[1] We treat the defendant's claim of error with respect to the court's charge on the maxim of "clean hands" as a claim that the court erroneously applied this equitable maxim and, thus, abused its discretion in awarding the relief sought.

*Harmon, Inc.,* 146 Conn. 523, 524, 152 A.2d 629 (1959); *Jenkins* v. *Bishop Apartments, Inc.,* 144 Conn. 389, 391, 132 A.2d 573 (1957); Maltbie, Conn. App. Proc. § 42.

On the evidence presented, the jury could reasonably have found the following facts: The plaintiff and Burton Cohen are the parents of the defendant, who was born in 1959. The plaintiff and her husband separated in 1972 and a dissolution action was instituted by the plaintiff in that year and was later withdrawn by her in January, 1974. The plaintiff and her husband remained separated until 1975, when the plaintiff's husband instituted a dissolution action in which a decree dissolving the marriage was rendered in August, 1975. In July, 1972, the plaintiff inherited approximately $40,000 from her father's estate. In 1973, she used $24,000 of these funds to purchase the condominium that is the subject of this action. Title to the condominium was taken in the name of the plaintiff and defendant as joint tenants with the right of survivorship. The defendant, who was nineteen years of age and unemployed at the time his mother purchased the condominium, admitted that he did not contribute any funds to this purchase. The plaintiff arranged for title in the property to be taken by herself and her son in joint tenancy for two reasons: her husband had made threats against her life and she feared that he would acquire some interest in the condominium if she died; and the defendant warned her that property held in her name could be reached by his father's creditors and that it was likely that his father would try to use such property to secure or to satisfy his debts.

Title was held jointly by the parties with the understanding that the defendant would deed his

interest back to his mother upon her request. After his mother purchased the condominium, the defendant told his sister and brother-in-law that it belonged to the plaintiff and that he would turn his interest over to her any time that she wanted it. The defendant also told the secretary in his father's office, where he was employed, that the condominium was not his and that he was going to sign it over to his mother. The plaintiff has paid all of the carrying expenses of the condominium, including taxes and maintenance costs, and the defendant never paid any part of these expenses. After the defendant moved out of the condominium in December of 1974, he agreed to execute a quitclaim deed conveying any interest he had in the condominium to his mother. The defendant later refused to execute the deed that was prepared by the plaintiff's attorney, however. He has refused to execute such a deed, although he was asked to do so both before and after his parent's divorce was finalized.

The defendant claimed that he never agreed to reconvey his interest in the property to his mother and, alternatively, that if he did, the plaintiff had placed the condominium temporarily in the joint estate to defraud her husband and the court in the dissolution proceeding that resulted in his parents' divorce. The defendant introduced into evidence two sworn financial affidavits that were submitted by the plaintiff to the court in the dissolution proceeding and in each the plaintiff had indicated that she owned a one-half interest in the condominium involved. Both at the trial and in her deposition, the plaintiff explained why she was led to assume title to the condominium in this manner and what her understanding of the consequences of doing so were.

The defendant claims that the court erred in several respects in its charge to the jury. In addressing such claims, we have said that a charge must be read in its entirety and should be upheld if it is accurate in law, adapted to the issues, and sufficient as a guide to the jury in reaching a correct verdict. *Murphy* v. *Soracco,* 174 Conn. 165, 169, 383 A.2d 1350 (1978); *McKirdy* v. *Cascio,* 142 Conn. 80, 87, 111 A.2d 555 (1955). Therefore, individual instructions are not to be judged in artificial isolation from the overall charge. *State* v. *Holmquist,* 173 Conn. 140, 151, 376 A.2d 1111, cert. denied, 434 U.S. 906, 98 S. Ct. 306, 54 L. Ed. 2d 193 (1977); *Mazzucco* v. *Krall Coal & Oil Co.,* 172 Conn. 355, 357, 374 A.2d 1047 (1977); see *Cupp* v. *Naughten,* 414 U.S. 141, 147, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973). The defendant first claims that the court erred by "placing an improper emphasis on the masculine gender" in its charge on credibility. In his brief, he states that at no time in its charge on credibility did the court make any reference to anything but the masculine gender. This simply is not so as the court referred to "he or she" a number of times in guiding the jury on the matter of the credibility of witnesses. It is true that there were some references in the charge to "he" or "his"; they clearly referred to "a party" or to "any witness," however, and, reasonably viewed, were not misleading or negative and certainly were not prejudicial when viewed from the standpoint of their probable effect on the jury. See *Maciejewska* v. *Lombard Bros., Inc.,* 171 Conn. 35, 41, 368 A.2d 206 (1976).

The defendant goes on to claim that the court committed error by giving instructions that "appeared" to place the burden of proof on certain

issues improperly on the defendant. This claim is without merit. The defendant directs our attention to two sentences of the charge. While charging the jury on the standard of proof, i.e., a fair preponderance of the evidence, the court stated that where evidence was conflicting, the jury would have to decide what the truth was. It then said: "Where these facts are necessary to establish a right of recovery as a defense, the party upon whom rests the burden of proof must prove them by a fair preponderance of the evidence." It is clear that the court meant to say "or" and not "as." The occurrence of this inadvertence in the body of an otherwise unexceptionable portion of the charge could not reasonably have misled the jury and certainly did not, viewing the charge as a whole. See *State v. Harris,* 172 Conn. 223, 226, 374 A.2d 203 (1977); *State v. Malley,* 167 Conn. 379, 382, 355 A.2d 292 (1974). The court had earlier clearly and correctly instructed the jury on the parties' respective burdens of proof. Later, in charging on the credibility of witnesses, the court said: "He [referring to a party] is not bound to demonstrate *conclusively* his right to recover or defend." (Emphasis added.) This statement was made immediately after the court told the jury that the law does not require a party who has the burden of proving certain facts to do so "with absolute certainty." This charge was correct.

The defendant also claims that the court erred in instructing the jury on the theory of a resulting trust.[2] The defendant argues that because the

---

[2] Once again, it is clear that it was for the court, and not the jury, to decide whether equity ought to intervene and impose a trust upon the defendant's record interest in the condominium. We assume that the jury served the function only of finding the facts essential to the imposition of a resulting trust.

plaintiff did not include a request for a resulting trust in her complaint the court's instruction on the theory was in error. We do not agree. We have said of the principles governing the imposition of a resulting trust: "When the purchase money for property is paid by one and the legal title is taken in the name of another, a resulting trust ordinarily arises at once, by operation of law, in favor of the one paying the money. . . . If it can be proved that the intention of the parties was otherwise, there is no resulting trust." *Walter* v. *Home National Bank & Trust Co.,* 148 Conn. 635, 638, 173 A.2d 503 (1961), quoted in *Zack* v. *Guzauskas,* 171 Conn. 98, 101, 368 A.2d 193 (1976). The facts alleged in the plaintiff's complaint amply support application of the principle of a resulting trust in this case. The plaintiff merely sought in her complaint the imposition of a trust in her favor, together with other equitable relief to which she may have been entitled. It was not necessary for the plaintiff to request specifically the remedy of a resulting trust, just as it was not necessary for her to request by name a constructive trust.

Finally, the defendant claims that the court was barred from imposing a constructive trust upon the property involved because of the equitable maxim that one who seeks to show that he is entitled to the benefit of equity must demonstrate that he comes to court with "clean hands."[3] See *Murphy* v. *Dantowitz,* 142 Conn. 320, 326, 114 A.2d 194 (1955). The defendant claims that his mother placed the property in the joint estate to defeat the claims of his

---

[3] Because we assume that the court, and not the jury, applied the "clean hands" maxim, our discussion of this issue encompasses the claim described by the defendant as the court's error in denying his motion to set aside the verdict.

father and his father's creditors. He also claimed that her failure to include the entire value of the condominium in the affidavit she filed in the divorce proceeding constituted a fraud upon the court.

The question presented is whether the trial court's decision to impose a constructive trust upon the defendant's record interest in the property[4] was clearly erroneous. Practice Book, 1978, § 3060D. We conclude that the facts presented to the jury, viewed in the light most favorable to the plaintiff, would support the court's imposition of a constructive trust and that the doctrine of "clean hands" did not require the court to leave the plaintiff with no remedy for the wrong done to her.

Although it is well settled that, in general, real property absolutely conveyed[5] cannot be shown to be subject to an express trust created by parol agreement; General Statutes § 52-550; *Hieble* v. *Hieble,* 164 Conn. 56, 59, 316 A.2d 777 (1972); *Worobey* v. *Sibieth,* 136 Conn. 352, 355, 71 A.2d 80 (1949); exceptions to this rule have been recognized where an injustice, sufficient to raise an equitable trust, would otherwise result. Ibid. In such cases, a trust does not arise so much by reason of the parol agreement of the parties but by operation of law. *Hieble* v. *Hieble,* supra, 59; Restatement (Second), Trusts § 44 (comment a). In *Beatty* v.

---

[4] The plaintiff, as noted above, sought only the imposition of a trust. Since the court granted the relief sought without specifying whether a constructive trust or a resulting trust was imposed, it is not apparent which theory the court adopted. Under the facts of this case, it is more likely a constructive trust and not a simple resulting trust was imposed.

[5] For purposes of our analysis, the plaintiff's taking title to the property in the joint estate with the defendant is the equivalent of an absolute conveyance of real property.

*Guggenheim Exploration Co.,* 225 N.Y. 380, 336, 122 N.E. 378 (1919), Judge Cardozo wrote: "A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." See 5 Scott, Trusts (3d Ed.) § 462, p. 3413. The imposition of a constructive trust by equity is a remedial device designed to prevent unjust enrichment. 5 Scott, op. cit. § 462. Thus, a constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. See, e.g., *Cherno* v. *Dutch American Mercantile Corporation,* 353 F.2d 147, 153 (2d Cir. 1965); *Mellon National Bank & Trust Co.* v. *Esler,* 357 Pa. 525, 528–29, 55 A.2d 327 (1947); Restatement, Restitution (1937) § 160; 5 Scott, op. cit. §§ 462, 462.2; 30 C.J.S., Equity § 95, p. 1028. One holding title to property upon which a constructive trust is imposed is not compelled to reconvey the property because he is a constructive trustee; it is because he can be compelled to convey title to the property that he is a constructive trustee. 5 Scott, op. cit. § 462, p. 3413.

In this case, the plaintiff's evidence disclosed not only that the defendant agreed to reconvey his interest in the property to the plaintiff, but that a confidential relationship existed between the plaintiff and the defendant. While the relationship between parent and child is not per se a fiduciary one, it does generate a "natural inclination to repose great confidence and trust." *Hieble* v. *Hieble,* supra, 61. The surrounding circumstances

support the conclusion that the transfer of a portion of the mother's interest to her son was on the basis of trust and confidence. Where that confidence and trust are abused, equity will intervene to remedy the wrong done, although the law would otherwise leave the parties where it finds them. See id.; *Worobey* v. *Sibieth,* supra, 356; annot., 35 A.L.R. 280, 308.

We do not agree with the defendant's claim that the doctrine of "clean hands" created an absolute bar to the court's decision to grant equitable relief to the plaintiff. The doctrine is not one of absolutes; *DeCecco* v. *Beach,* 174 Conn. 29, 35, 381 A.2d 543 (1977); it has its limitations and is not a judicial straightjacket. See *West Los Angeles Institute for Cancer Research* v. *Mayer,* 366 F.2d 220, 227 (9th Cir. 1966), cert. denied, 385 U.S. 1010, 87 S. Ct. 718, 17 L. Ed. 2d 548 (1967); *Indiana High School Athletic Assn.* v. *Raike,* 164 Ind. App. 169, 197–98, 329 N.E.2d 66 (1975); 2 Pomeroy, Equity Jurisprudence (5th Ed.) § 399; 27 Am. Jur. 2d, Equity § 136; 30 C.J.S., Equity § 98. The maxim, being founded on public policy, may be relaxed on that ground; this resiliency can be seen not only where parties are not in pari delicto, but in some instances where they have been. See 30 C.J.S., Equity § 98. The application of the equitable maxim rests in the sound discretion of the trial court and generally should not be employed to insulate the party who asserts it from the consequences of his own wrongdoing. See *DeCecco* v. *Beach,* supra, 35; 30 C.J.S., Equity § 99. This is especially so where the consequence of denying equitable relief would be to visit upon the party seeking it a forfeiture of extreme proportion. See *West Los Angeles Institute for Cancer Research* v. *Mayer,* supra, 227.

The defendant in this case successfully persuaded his mother to place the property involved in the joint estate ostensibly to defeat the potential claims of his father's creditors. Although he promised to reconvey to his mother his record interest in the property at a future date, he never, in fact intended to do so. These facts support a conclusion that the defendant took personal advantage of his confidential relationship with his mother by fraud and artifice. See 3 Pomeroy, op. cit. § 877d.

For the proposition that the court was barred from granting any relief to the plaintiff, the defendant relies upon *Pappas* v. *Pappas,* 164 Conn. 242, 320 A.2d 809 (1973). This case is distinguishable from *Pappas,* however. There is no indication here that the plaintiff intended to perpetrate a fraud upon the court, as did the plaintiff in *Pappas.* The plaintiff in this case feared the claims of her husband's creditors, and justifiably so, as well as any claim her husband might have on the property in the event of her death. The plaintiff here never falsely represented to the court that the property was transferred to the defendant for valuable consideration, as did the plaintiff in *Pappas.* The property involved in this case, unlike that involved in *Pappas,* was not property of the marriage but belonged exclusively to the plaintiff as an inheritance from her father. Moreover, there was no indication in *Pappas* that the transferee of the property abused a confidential relationship by inducing his parent to transfer property to him by a false promise to reconvey the property at a future time, as did the defendant here. The defendant here should not be entitled to profit from his own wrongdoing. See 4 Pomeroy, op. cit. § 1054d.

Finally, it is a well-established rule of equity jurisprudence that "[t]he party to a suit, complaining that his opponent is in court with 'unclean hands' because of the latter's conduct . . . must show that he himself has been injured by such conduct, to justify the application of the principle to the case. The wrong must have been done to the defendant himself and *not to some third party.*" (Emphasis added.) 2 Pomeroy, op. cit. § 399, p. 99; see *Cornwell* v. *Cornwell,* 116 N.H. 205, 210, 356 A.2d 683 (1976). We recognized and applied this rule in *Collens* v. *New Canaan Water Co.,* 155 Conn. 477, 234 A.2d 825 (1967), where we refused to apply the clean hands maxim because the party asserting it had not been prejudiced or harmed in any manner whatsoever by the alleged misconduct of his opponents.[6] Id., 492; see *Bouton* v. *Beers,* 78 Conn. 414, 416, 62 A. 619 (1905). Therefore, even if we assume that the plaintiff engaged in misconduct in the dissolution proceeding, the defendant was in no way harmed by it. See *Gallo* v. *DeMichael,* 118 Conn. 487, 489, 172 A. 922 (1934).

There is no error.

In this opinion the other judges concurred.

---

[6] It should also be noted that if in fact the plaintiff intended to deceive the court concerning the extent of her individual estate in the dissolution proceeding, as the defendant asserts, it is the plaintiff's husband who may have been injured thereby. He may seek his own remedy by a motion to open the dissolution judgment. See *Kenworthy* v. *Kenworthy,* 180 Conn. 129, 131, 429 A.2d 837 (1980).