[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I
The plaintiff herein, John Salafia, alleges that he is aggrieved by an order and decree of the Probate Court for the District of Meriden which accepted an Amended Inventory in the Estate of his deceased mother. This Amended Inventory filed by the Administratrix, c.t.a. included:
 1. Connecticut National Bank Partnership Accounts in the name of the deceased testatrix, Jennie F. Baumbusch, and the plaintiff, John L. Salafia, consisting of:
 a. Connecticut National Bank Now Account No. 00-2370-0332 — $3,842.78
 b. Connecticut National Bank Savings Account No. 055-21700-4 — $19,522.36
 2. Reimbursement of a fee paid from these accounts by the plaintiff John Salafia to himself for services rendered CT Page 12140 to the testatrix — $6500
The plaintiff objected to the inclusion of these three items in the estate. The Probate Court accepted the inventory as presented holding that the above accounts were includable as wholly owned assets in the estate of the late Jennie Baumbusch.
An order permitting this appeal required that notice be given to the Administratrix, c.t.a. and to Joseph Salafia, the brother of the plaintiff and an heir at law of the testatrix, Jennie Baumbusch. Both appeared and filed responsive pleadings.
The plaintiff's amended Reasons of Appeal is as follows:
1. On February 8, 1994, a hearing was held (Hon. Thomas Griglun Probate Judge presiding) upon the application of the plaintiff, John Salafia, objecting to the inventory dated November 26, 1994, filed by Jeannette Johnson, Administratrix c.t.a.
2. Plaintiff objected to the inclusion of sixty five hundred ($6,500.00) dollars in the estate which was given over to the administratrix by plaintiff upon her demand but without a sound basis in law or in fact.
3. Plaintiff also objected to the inclusion of two bank accounts presently in his possession: Now account #00-2370-0332 and savings account #055-0-21700-4.
4. On February 23, 1994, the Court accepted the Inventory dated November 26, 1993 as presented.
5. The order of the Probate Court is erroneous in that it is contrary to Conn. Gen. Statutes § 36-3(1) 1995, § 36a-290(b) which creates a statutory presumption that in the absence of fraud or undue influence the establishment of a bank account in the names of two or more persons, payable to any one of them or to the survivor, is prima facie evidence of the intent to vest ownership of the account in the survivor.
6. The Administratrix c.t.a failed to prove fraud or undue influence on the part of the plaintiff or anyone else to overcome the presumption found in Conn. Gen. Statutes § 36-3 (1) 1995 § 36a-290 (b). CT Page 12141
7. The monies paid over to the Administratrix c.t.a. by the plaintiff in the amount of $6,500.00 were part of the above bank accounts and were rightfully his and should be returned to him.
8. The plaintiff John Salafia is the rightful owner of the said bank accounts.
Both defendants denied the plaintiff's allegations contained in plaintiff's Amended Reasons of Appeal.
This court held de novo hearings on June 13, 1995 and June 14, 1995.
When the hearings commenced, the court required the plaintiff to go forward with evidence to establish the existence of a General Statutes § 36a-290 account and placed upon the defendant Administratrix, c.t.a. and the heir at law, the brother of the plaintiff, the burden of overcoming the statutory [rebuttable] presumption concerning the intention of all of the named owners thereof to vest title to such account including all subsequent deposits and additions made thereto, in such survivor or survivors, in any action or proceeding between any two or more of the depositors, respecting the ownership of such account or its proceeds.
The plaintiff contends that the ownership of the Partnership Account is governed by the statute § 36a-290. The defendants claim that a confidential relationship existed between the plaintiff and the testatrix, and therefore they did not have to prove the existence of a fraudulent intent or undue influence in order to impose a constructive trust upon the Partnership Joint Account.
The evidence offered at the hearing enables the court to find that the testatrix, the mother of the plaintiff and the defendant, Joseph Salafia had taken measures before her stroke to divide her estate equally between her two sons. She gave power of attorney to both sons on January 11, 1978 (Exhibit 3). On the same day she bequeathed and devised her entire estate to these sons — one half to the plaintiff if he survived her, otherwise, to my grandchildren living at my death, one half (1/2) to my son, Joseph J. Salafia, per stirpes absolutely. (Exh. 4). She created an irrevocable trust of her home on September 19, 1986, designating Joseph as the trustee of a trust for her benefit with the trustee under an obligation to distribute the CT Page 12142 trust res in equal shares to Joseph and the plaintiff upon her death if they survived her, otherwise to the children of Joseph if either Joseph or the plaintiff failed to survive her. (Exh. 5).
Exhibit 9, dated May 14, 1988, demonstrates the intent of the testatrix to place her money assets during her lifetime in joint accounts with her two sons in roughly equal amounts. During her lifetime, she told her sons of her decision to create joint accounts with each of them but did not advise either of them of balances in these accounts. The testatrix suffered a stroke on October 30, 1990. Thereafter, she was confined in hospitals or nursing homes until her death on December 2, 1991. Prior to her stroke she was a vigorous, keen woman in full control of her faculties. She was in complete control of her financial affairs.
The power of attorney was not exercised by either brother prior to her stroke. Although she created a partnership account jointly with plaintiff on or about April 21, 1989, plaintiff's application is dated April 23, 1989 (Exh. A). She did not authorize the bank to issue a bank card to him. She maintained control of both the checking account and savings account which were linked together in this partnership, writing all checks on this account until October 27, 1990. Thereafter the plaintiff assumed control of her checkbook with her permission. Plaintiff wrote his first check in her behalf on November 5, 1990 (Exhibit 7). The last check written by plaintiff on behalf of his mother was written on December 1, 1991. (Exhibit 8).
All of the checks written by plaintiff were written with his mother's permission and consent and in payment of her nursing home and other obligations with two exceptions. The first exception was Check 1918, dated October 31, 1991, in the amount of $6000 with a caption John L. Salafia services 11/1/90-10/31/91. The second exception was Check 1926, dated November 30, 1995, in the amount of $500 with a caption John L. Salafia service for Nov. 91. Plaintiff's testimony regarding the services he performed focused on paying his mother's bills and depositing her pension, social security and interest. He claimed no written or oral agreement with his mother as a basis for payment of his fees. Part of his testimony with reference to these two withdrawals was inconsistent with his claim for services rendered in that he alleged he withdrew the money to prepare for the time when his mother would become a Title XIX recipient and would need a supplementary source for non-Medicaid authorized amenities. CT Page 12143
It is clear, however, that plaintiff collected his mother's social security benefits, her pension and all sources of interest income and deposited them in the partnership account. These funds and other funds from the various bank accounts owned and controlled by his mother before her stroke were used by him to pay her expenses until she died. When the mother suffered her stroke, he prepared a financial statement for submission to a caregiver. This statement (Exhibit B) described the various certificates of deposit, savings accounts and passbook accounts possessed by the mother and held in the joint names of one or the other brother. These accounts totalled $87,577.79. They demonstrate that the testatrix' intent to treat the two brothers equally persisted up to the time of her stroke, October 30, 1990. After assuming control of his mother's finances, the plaintiff consolidated all of his mother's accounts held jointly in his name or his brother's name in the partnership account in the Connecticut National Bank 0550217004 in which he was listed as a co-owner with his mother. All of the funds in these accounts had been deposited therein by the mother from her own assets. Neither the brother Joseph nor John the plaintiff contributed any sum to these accounts. The defendants, the Administratrix, c.t.a. of the estate of the mother, and Joseph both assert that the balance remaining in the partnership fund after the death of the testatrix, some $23,000 did not pass to the survivor, the plaintiff, but is a wholly owned asset of the estate.
From the date of her stroke on October 30, 1990 until her death on December 2, 1991, the testatrix was alert, mentally competent and aware of her surroundings. She was, however, physically disabled and unable to use her right hand for signing documents. During this time she was depressed, given to crying frequently and complaining she wanted to go back to her home. Since she required skilled nursing care, home care was not feasible. Both sons and Joseph's wife and children visited her frequently in the nursing home. On many occasions she spent weekends at Joseph's home.
Prior to the stroke both sons were attentive to their mother's needs and entertainment and enjoyed a close, loving relationship with her. The plaintiff prepared her income tax for her. Prior to the stroke, both brothers had a reasonable relationship with each other. Subsequent to the stroke, the plaintiff developed a severe bias toward his older brother Joseph and his wife, Sheila. Plaintiff's testimony indicates no substantial basis for this bias and prejudice. This bias and CT Page 12144 prejudice caused him to exclude Joseph from any decision-making about his mother's care. It makes suspect his self-serving testimony that his mother wanted him to have her money to the exclusion of Joseph or her estate.
Prior to her stroke, the evidence is clear that the testatrix intended that her estate be shared equally by her sons. Since her mental condition did not change after her stroke, it is difficult to believe that she conceived an intention to favor the plaintiff to the exclusion of her older son.
The testatrix trusted the plaintiff, relied upon him to handle her financial affairs and permitted him to close out the joint accounts in the names of both the plaintiff and his brother Joseph. The plaintiff and another witness, Karen Scala, both testified that the mother's primary concern in turning over her financial affairs to plaintiff was the payment of her ongoing bills which included approximately $6000 month for nursing home expenses. The consolidation of her savings in the partnership account in which the plaintiff was a co-owner was purely a matter for her convenience to meet her financial obligations.
"The relationship between a parent and a child does not per se give rise to the establishment of a fiduciary relationship. " Cohen v. Cohen, 182 Conn. 193 (1980). ". . . it does generate, however, a natural inclination to repose great confidence and trust", Hieble v. Hieble, 164 Conn. 56, 61 (1972). If, however, a confidential relationship is proved, then the burden of proving fair dealing or the burden of showing absence of undue influence shifts to the fiduciary, and that burden must be sustained by clear and convincing evidence. Alaimo v. Rover, 188 Conn. 36, 41
(1982); Hieble v. Hieble, 164 Conn. 56, 61 (1972).
Given all the factors noted before, the plaintiff's familiarity with the testatrix' estate plans, his service in preparing her income tax obligations, his access to her safe deposit box and other records, his severance of all communications with his brother who had been named as co-executor of her estate and who shared a power of attorney with him, his complete assumption of all decisions regarding the financial affairs of his physically disabled mother, the mother's acknowledged reliance upon him, the court concludes that a confidential relationship existed between the plaintiff and the testatrix. CT Page 12145
Therefore the burden of his proof on the issue of fair dealing or undue influence shifted to the plaintiff. The court concludes that he has not sustained his burden by the requisite standard of clear and convincing evidence.
Accordingly, plaintiff's appeal is dismissed.
Dorsey, J. State Trial Referee