[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff seeks a judgment imposing a constructive trust on the premises known as 58 Woodchuck Road, Salem, Connecticut, and a decree transferring title of said premises to him. His claim of title is based on a contract of employment he entered into and performed while employed by LVE Corporation, a family owned corporation controlled by his father, Leo R. Facchini. LVE Corporation owned and operated a bar and restaurant known as the El Bolero Café , located adjacent to the main gate of the General Dynamics/Electric Boat Shipyard in Groton, Connecticut. The LVE Corporation name was a combination of the first letter of the first name of its shareholders; principally Leo R. Facchini, plaintiff's father, and as minority shareholder, plaintiff's mother, Virginia, and plaintiff's grandmother.
There was testimony that it was consistently the family's practice for liability reasons to hold title to real estate, equitably owned in whole or in part by a family member, in the name of a different family member. The testimony showed that title to the home of the plaintiff's father, Leo R. Facchini, and mother, Virginia Facchini, was held solely in Virginia's name, to protect it from liability claims due to the operation of the El Bolero Café . The property at issue here, when purchased in 1981, was titled also in Virginia Facchini's name, for business liability reasons and out of concern for the plaintiff's child support obligations. At the time the property at issue was transferred from Virginia to the defendant, the home of Leo R. Facchini and Virginia Facchini was transferred from Virginia to their son, Frank Facchini, to protect it from medical or nursing care charges which might accrue due to Virginia's progressive Parkinson's Disease and dementia. It is claimed here that the transfer of the property at issue was transferred to the defendant for the same reason.
The plaintiff, Lawrence Facchini, testified that he began working for this father at the El Bolero Café in 1979 as a manager. He worked, and was paid, for a 40-hour week. His net salary, after deductions for taxes and medical insurance was approximately $100.00 per week. In addition to his paid salary hours, plaintiff also worked as a bouncer late in the evenings on the weekend. Plaintiff did not collect or receive tips as the manager. His father told him that the business enjoyed its best quarter subsequent to his hiring. The plaintiff testified that employees had been stealing from the business when he was hired and that he put a stop to this practice. In consideration of his efforts as a manager and his low wage, his father told him in CT Page 1331 1980 to look for a home for himself to be purchased and paid for by the family business.
The plaintiff had, previous to his employment, rented and resided in a house located at 58 Woodchuck Road in Salem. He had vacated the premises when the property changed ownership. He now made inquiry of this property's availability for purchase and later visited the property with his father and uncle Raymond Facchini. At the time, the owner of the property was offering his entire tract of 180 acres for sale, at $500.00 an acre. The owner offered to sell the house at 58 Woodchuck Road with five acres of land to the plaintiff and his father. Because the plaintiff was an outdoors man and kept a number of dogs, pigs and other animals, an additional two acres were requested by the plaintiff and his father, and on February 8, 1981, the subject property consisting of a house and seven acres was purchased for cash and a purchase money mortgage. Title was taken in the name of Virginia Facchini to protect the property from possible claims generated either by the plaintiff the management of the family business, for which he became permittee, or the plaintiff's child support obligations.
The plaintiff testified that the house on the property was in very bad shape when purchased. The plaintiff repaired and restored the house and, over the years, added a deck, kept the exterior painted, replaced the water pump in the well and replaced the furnace.
The plaintiff testified that he was told repeatedly, by his father, from the time of purchase and throughout the time of his employment, that he would eventually own the 58 Woodchuck Road property "free and clear" and it would be transferred to him when his youngest child reached the age of 18. The mortgage, taxes and insurance were paid by LVE Corporation and in 1986, the mortgage was fully paid and released.
The plaintiff testified that he was employed at the El Bolero Café until the business was sold in 1991. His salary eventually was raised. At the end of his employment, his net pay was $150.00 per week. He continued to work there despite the low salary and because the subject property had been purchased for him.
After the business was sold, the plaintiff continued to live on the subject premises and his taxes and insurance were paid by the family. On August 16, 1996, the premises were transferred to CT Page 1332 the defendant. At this time, and for approximately 5 years, the plaintiff's mother had been suffering from a progressive condition of Parkinson's disease and dementia. In the summer of 1996, the defendant had stated to his father that "Ma is nuts, she needs to go in a nursing home."
Neither the defendant not the defendant's father informed the plaintiff of the transfer of the property at the time it occurred. He learned that the property had been transferred to the defendant when the defendant came to see him while he was working at the Crystal Mall on January 16, 1997. The defendant told him that he had been left the property and was going to divide and sell it. A short while later, the defendant told the plaintiff that he would personally evict the plaintiff ". . . up to and including snapping your neck." On March 22, 1997, the plaintiff received a notice to quit, directing him to vacate the premises on or before April 1, 1997. On April 10, 1997, the plaintiff issued the complaint in this case seeking the relief requested.
All of the plaintiff's siblings, with the exception of the defendant and a sister, Christine, who did not appear, testified in support of plaintiff's claims, as did his mother. Virginia was permitted to testify with her son, Frank Facchini, her conservator at her side. It was agreed that the plaintiff's father would be absent from the courtroom for her testimony. Virginia testified that the Salem property was purchased for Larry in consideration of his employment in the family business. She did not recall signing the deed transferring the property to the defendant nor did she intend the property to be owned by the defendant. The effects of her progressive condition of Parkinson's disease and dementia were apparent but she was unequivocal as to her statements.
The plaintiff's brother, Frank Facchini, testified in support of the plaintiff's claim that the subject property was purchased for and intended to be the property of the plaintiff. He stated that he has seen to his mother's care for years, and is now her conservator because his father was unwilling or unable to care for her in the family home and both his father and brother, the defendant, wished to place her in a nursing home. He stated that the original proposal for the properties was to place his parent's home on Lloyd Road in Waterford in the defendant's name. When he learned of this, he proposed that it be put in his name due to his mistrust of the defendant. He wanted to ensure that CT Page 1333 his mother would not be displaced and put in a nursing home and that his father would still be able to reside at the Lloyd Road home. Eventually it was agreed that Lloyd Road would be put in his name and the subject property would be put in the defendant's name.
Frank testified that at the time the property was transferred, his mother was concerned as to whether the defendant would honor the agreement that the property was to be the plaintiff's but was afraid of her husband and fearful of defying him. He stated that she signed the deed very reluctantly but in the hope that the defendant would not claim the property as his own. He stated that his mother's relationship with the defendant was strained, that the defendant teased his mother about her condition and that she would not favor him. He stated that he spoke to Leo prior to the transfer and Leo assured him that Larry would continue to live at the property. When asked on cross-examination if he felt the defendant had acquired the subject property through fraud and artifice, he answered that he did. He believed that the defendant had purposely endeared himself to his father knowing that his father controlled and directed his mother, so that he could have the property transferred to him. He testified that after the transfer, the defendant said he intended to sell the property immediately and ignore the "look back period" which would enable the state to lay claim to the property in the event his mother sought medicare benefits. On redirect, Frank testified that George Kanabis, attorney for his parents who prepared the deeds of transfer, stated at the time of the closing that it was not right to transfer property to the defendant and wanted to postpone the transfer. At the time of the closing, his mother was afraid to say anything with his father in the room. Frank testified that he believed his mother was convinced by his father sign a deed she did not want to sign because she feared him. He stated that the deeds were not recorded until November 25, 1996, because of Attorney Kanabis' concerns. Later, when the defendant sought to evict the plaintiff, Frank testified he spoke to Attorney Kanabis, who stated "I know this is Larry's house, let me try to do something, we will get this worked out."
The plaintiff's sister, Jacqueline Facchini, testified that she was employed by the family business as a bookkeeper. She confirmed the low wages that Larry was paid during his employment at the El Bolero Café and that he did not receive compensation such as tips. She testified that at the time the property was purchased, and numerous times thereafter, she heard her father CT Page 1334 say that this property was purchased for the plaintiff as compensation for his years of employment at the El Bolero Café . She understood that the house was put in her mother's name principally because of the plaintiff's ex-wife. She stated that her mother told her, as early as 1984, that the plan was to split the Lloyd Road property evenly between five of the children, not including the plaintiff because the subject property was given to the plaintiff. She testified that she believed the defendant curried favor with his father because his father was an alcoholic and the defendant acted as enabler, telling him that he did not have a drinking problem. He influenced his father for the purpose of getting him to transfer the property to him. She also testified that she was employed at Bravo Bravo, a restaurant owned by Attorney Kanabis's wife. Four weeks prior to her testimony, Attorney Kanabis told her at the restaurant, "Everyone knows that is Larry's property."
The plaintiff's sister, Virginia Olson, testified that she heard her father tell the plaintiff that he would own the subject property "free and clear", and that is why the mortgage was paid off. She testified that she had a conversation with the defendant sometime prior to the transfer, concerning the ultimate disposition of the property. The defendant stated that he understood the Lloyd Road property was to be distributed to the children in equal shares, but not to the plaintiff because he received the property in Salem. She testified that she believed the defendant, knowing that their father controlled her mother, curried favor with him and encouraged him, denying he was an alcoholic in contrast to the rest of the siblings who wished him to seek treatment. She stated that her mother never changed her opinion that the subject property was the plaintiff's and that her father "browbeat" her mother into transferring title to the defendant. On Thanksgiving in 1997, the defendant told her not to worry, that Larry would continue to live in Salem and nothing would change.
The plaintiff's uncle, his father's brother, Raymond Facchini, testified that his brother told him repeatedly the subject property had been purchased for the plaintiff in compensation for his employment, as he put it, ". . . paying him off for working there and being the slave he was for him." He stated that he was very familiar with the defendant, who had come to his house nearly every day in the summer for eight to ten years, until August of 1996, to use his beach and facilities at the shore. He stated that the defendant had not been involved CT Page 1335 with his family or father until the last two years and never contributed anything to the family but "a bad name". He testified that the defendant is the only one in the family that condones his brother's drinking.
Attorney Kanabis testified that he had prepared the deeds transferring the subject property and Lloyd Road and officiated at their execution. He testified that he questioned Virginia Facchini to determine whether it was her free act and deed to execute the documents and was satisfied with her answer. He stated he did not have any meetings with family members beforehand and did not discuss the content of the deeds. He testified he delayed recording the deeds because he felt the transfers were poor estate planning. He acknowledged on cross-examination that he had spoken to the plaintiff after the deeds were recorded. He may have talked to Frank before or after but did not recall talking to Jacqueline.
The defendant testified that the transfer of the property was outright to him. He sought to remove the plaintiff because of his expenses in owning the property. He testified that, as the owner, he paid the next tax bill due after the transfer, in January of 1997. The testimony of his father and his father's check, made an exhibit, make it clear that he did not. In fact, to the date of trial, his father has continued to pay the taxes. The testimony of the plaintiff's father was that the purpose of the transfer was to protect them from claims for his wife's medicare bills, and that his expectation was that the plaintiff would continue to reside on the premises. At the time of trial, the plaintiff's father testified that after the transfer, the plaintiff was ". . . going to have to start picking up his boats and paying rent, taxes and so forth."
The father also testified that he did not promise to convey the property to Larry. The defendant testified that he was not involved at all in his mother's decision to convey the real estate to him. He also claimed that he was never told by his father that there was a promise by him or his wife to give the property to Larry. In view of all the evidence and the testimony by every other witness, the court does not find this testimony credible.
Law
The defendant has asserted as a special defense, the Statute CT Page 1336 of Frauds.
 Where a transfer of real property is made to one person and the purchase price is paid by another as an intended gift to a third person, the Statute of Frauds requires that the creation of the trust must be in writing. 2 Restatement (Second), Trusts 453. There is, however, an exception to the requirement of writing. "Where the owner of an interest in land transfers it inter vivos to another upon an oral trust in favor of a third person or upon an oral agreement to convey the land to a third person, and the trust or agreement is unenforceable because of the Statute of Frauds, and the transferee refuses to perform the trust or agreement, he holds the interest upon a constructive trust for the third person, if . . . the transferee at the time of the transfer was in a confidential relation to the transferor . . . ." Restatement, Restitution 183. A constructive trust is an equitable remedy imposed to prevent unjust enrichment." "`Thus, a constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it.'" (Citations omitted.) Filosi v. Hawkins, 1 Conn. App. 634, 639, 474 A.2d 1261 (1984); see also Cohen v. Cohen, 182 Conn. 193, 203, 438 A.2d 55 (1980). Gulack v. Gulack, 30 Conn. App. 305, 311 (1993).
On the facts and claims of this case, the Statute of Frauds is not a bar. Our Supreme Court has also characterized the exception as arising by operation of law.
 Although it is well-settled that, in general, real property absolutely conveyed (5) cannot be shown to be subject to an excess trust created by parol agreement: General Statutes 52-550; Hieble v. Hiebel, 164 Conn. 56, 59, 316 A.2d 777 (1972); Worobey v. Sibieth, 136 Conn. 352, 355, 71 A.2d 80
(1949); exception to this rule have been recognized where an injustice, sufficient to raise an equitable trust, would otherwise result. Ibid. In such cases, a trust does not arise so much by CT Page 1337 reason of the parol agreement of the parties but by operation of law. Hiebel v. Hiebel, supra, 59; Restatement (Second), Trusts 44 (comment a). Cohen v. Cohen, 182 Conn. 193, 202 (1993).
In Gulack, the court described the elements of a constructive trust:
 The elements of a constructive trust are the intent by a grantor to benefit a third person, the transfer of property to another who stands in a confidential relationship to the grantor with the intent that the transferee will transfer the property to the third person, and the unjust enrichment of the transferee if the transferee is allowed to keep the property. A constructive trust is created by operation of law when these elements are present. Gulack, p. 310.
The court finds that there was a confidential relationship between the plaintiff and his father and mother and the defendant.
Before a trial court finds that a constructive trust exists and should be imposed, the court must find that a confidential relationship existed between the transferor and the transferee at the time of the transfer of the property. Gulack, p. 312.
 A confidential relation exists not only where there is a fiduciary relation . . . . but also where, because of family relationship . . . . the transferor is justified in placing confidence in the belief that the transferee will act in the interest of the transferor. Gulack, p. 312.
In Cohen v. Cohen, 182 Conn. 193, 438 A.2d 55 (1980), a constructive trust was imposed and a confidential relationship was found between a mother and son. "While the relationship between parent and child is not per se a fiduciary, it does generate a natural inclination to repose great confidence and trust." Cohen, p. 203.
"It is unnecessary to find fraudulent intent for the imposition of a constructive trust whether there be fraud at the inception or a repudiation afterward, the whole significance of CT Page 1338 such cases lies in the unjust enrichment of the grantee through his unconscionable retention of the trust res." Hieble v. Hieble,164 Conn. 56, 63, 316 A.2d 777 (1972).
The establishment of a confidential relationship places a significant burden of proof on the party defendant claimed to be the constructive trustee. "[W]here a confidential relationship has been established, there is substantial authority that the burden of proof rests on the party denying the existence of a trust — and then by clear and convincing evidence to negate such a trust." Hieble, p. 62.
The defendant cites the case of Dunham v. Dunham,204 Conn. 303 (1987). The court distinguishes that case, however, because there the trial court found that the plaintiff had not established an agreement. In this case, the court does find that there was an agreement to convey the property to the plaintiff.
Discussion
It is clear from the testimony of the transferor, Virginia, that she intended the subject property to benefit a third person, the plaintiff. The property was transferred to the defendant with whom she had a confidential relationship, as her son, with the intent that he would ultimately transfer the property to the plaintiff. The defendant would be unjustly enriched if allowed to keep the property. The defendant admits in his answer that he provided no consideration for the transfer. On the other hand, the plaintiff did provide consideration for the property, his employment in the family business for eleven years at a low wage. The plaintiff has alleged fraud and artifice by the defendant in acquiring title to the subject property. The record supports this allegation. It is unnecessary, however, to find fraudulent intent for the imposition of a constructive trust. Consistent with the principle enunciated in Hieble, supra, the significance in this case lies in the unjust enrichment of the defendant through his unconscionable retention of the trust res, the subject property.
The defendant is required, upon the showing of a confidential relationship, to negate the existence of the trust by clear and convincing evidence. The evidence presented by the defendant to disprove the trust, his claim of shouldering of the expenses of the property and particularly the payment of the taxes is clearly unconvincing in light of its falsity. The defendant presented no evidence to show that he contributed anything to the family, or CT Page 1339 its business. He did not earn the favor of an outright gift of this property to him, as opposed to any other member of the family, and in particular, the plaintiff. On the other hand, the testimony of the plaintiff's siblings and his uncle, who stood to gain nothing by the imposition of the constructive trust in favor of the plaintiff, was overwhelming as to the equitable ownership of the plaintiff.
The sole witness for the defense, other than the defendant, was the plaintiff's father. There was ample testimony which explained the alliance of the plaintiff's father with the defendant, yet even his testimony evidences that the status quo, equitable ownership and possession by the plaintiff, continued after the transfer. He has continued to pay the taxes. He never alerted the plaintiff to any change in his circumstances and expected the plaintiff to remain on the premises. It is the defendant who has sought to remove the plaintiff from the premises and unjustly enrich himself. It is he who has necessitated the intervention of a court of equity to prevent his unconscionable act.
The court finds the issues in favor of the plaintiff, Lawrence Facchini, and, therefore, ordered judgment in his favor. A constructive trust is hereby orders on the premises known as 58 Woodchuck Road, Salem, Connecticut in favor of the plaintiff and a decree transferring title of said premises to the plaintiff is also ordered.
D. Michael Hurley Judge Trial Referee