THEODORE M. MALTBIE ET AL. *vs*. ALFRED A. OLDS
ET ALS.

First Judicial District, Hartford, October Term, 1914.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

To obtain fertilizer for their tobacco farm, the owners agreed with a
    dealer in fertilizers to lease to him their tobacco land and sheds as
    security for the fertilizers furnished, and to raise, cultivate, harvest
    and sell the tobacco crop at their own expense and turn over the
    proceeds to the dealer, who was to pay himself therefrom and
    return the balance to the owners of the farm. Accordingly the
    fertilizer was supplied and a written instrument in the form and
    terms of a lease was given for one year from April 1st, 1912. The
    parties did not intend that the lessee should enter upon or take
    possession of the premises, and he never did. The owners of the
    farm continued in possession of it, raised and harvested the tobacco
    crop at their own expense, and sold it as their own. Being pursued

Maltbie v. Olds.

by creditors they turned over the proceeds of the sale to their attorneys in February, 1913, to enable them to effect a settlement with the creditors. Within four months thereafter the owners of the farm were adjudicated bankrupts and their attorneys, the present plaintiffs, brought this action of interpleader to determine whether the fund should go to the trustee in bankruptcy or to the dealer in fertilizers, who claimed it as a secured creditor. *Held:*—

1. That the relation established between the owners and the dealer in fertilizers depended upon their intention as gathered from their agreement when read in the light of its surrounding circumstances.

2. That the transaction had none of the characteristics of a "cropper" contract, a relation which it was quite clear the parties did not intend to create.

3. That the so-called lease, taken in connection with the oral agreement of the parties, was a lease only in form and name, since it conveyed no interest in the farm to the dealer, and therefore none to the crop considered as part of the realty; nor did the agreement purport to give him any interest in the crop apart from the land.

4. That the transaction gave rise to no resulting or constructive trust under which it could be claimed that the fund was held for the benefit of the dealer to the exclusion of the other creditors of the owners.

5. That an order upon the plaintiffs, given by the owners to the dealer, for the payment of the amount of his claim, did not affect the title to the fund, and was not binding upon the trustee in bankruptcy, since it was given within four months of the adjudication in bankruptcy and without any present valuable consideration.

6. That the fund belonged to the trustee in bankruptcy and was applicable to all creditors, including the dealer.

A "cropper" is one who cultivates the land of another in consideration of receiving a portion of the crop raised. He has no interest in the land and therefore none in the crop until its division.

To acquire an estate in land leased, it was necessary, at common law, for the lessee to make an entry upon it; but the statute of uses has dispensed with this requirement and an actual entry is no longer essential.

The law will not presume the existence of a fact in direct opposition to an express provision of the parties.

Fraud, actual or constructive, is the foundation on which the law raises a constructive trust.

Argued October 8th—decided December 2d, 1914.

ACTION of interpleader to determine the rights of the respective defendants in and to the sum of $1,275 in the hands of the plaintiffs, brought to and tried by the

Superior Court in Hartford County, *Bennett, J.;* facts found and judgment rendered awarding the money to the defendant Seymour, trustee, from which the other defendants, Messrs. Olds and Whipple, appealed. *No error.*

Olds and Whipple were copartners dealing in fertilizers and agricultural supplies. Batterson Brothers were copartners owning and conducting a farm in East Granby. In the spring of 1912 they requested Olds and Whipple to sell them fertilizer for use on their farm. Olds and Whipple refused unless they received security for the payment of these goods, and suggested that Batterson Brothers give them a lease of their farm as security. Thereupon the parties entered into the following agreement: Batterson Brothers were to give Olds and Whipple a lease of their tobacco land and sheds as security for the fertilizer furnished by Olds and Whipple, and were to raise, cultivate and harvest the tobacco crop, furnishing at their own expense the labor and tools, and to sell the crop and turn the proceeds over to Olds and Whipple, who were to pay their own bill out of the proceeds and turn over the balance to Batterson Brothers.

On June 17th, 1912, to carry out this agreement, Batterson Brothers gave Olds and Whipple an instrument in form and terms a lease of their farm for the term of one year from April 1st, 1912, for the consideration of $1 and other good and valuable considerations.

Between June 5th and December 9th, 1912, Olds and Whipple furnished fertilizer to the amount of $572.75, which was used in raising, cultivating, and harvesting the crop grown upon the farm, and in July, 1912, and the fall of that year, this agreement was changed so that Olds and Whipple were to furnish other goods amounting to $210, upon the same terms and conditions as

those theretofore furnished, and these were so furnished and similarly used on the farm.

The parties never intended that Olds and Whipple should enter upon or take possession of said premises, and they never did. Batterson Brothers continued in possession of the farm, and raised, cultivated and harvested the tobacco crop, furnishing at their own cost the labor, teams, tools, etc., and they dealt with this crop as their own and sold it as their own.

Being pursued by creditors, they turned over to the plaintiffs on February 10th, and February 17th, 1913, $1,275, the proceeds of the sale, for the purpose of having them effect a settlement with their creditors. At a meeting of the creditors, Olds and Whipple claimed to own the crop of tobacco and the proceeds from its sale, as they always had done. On March 31st, 1913, Batterson Brothers executed and delivered to Olds and Whipple an order on the plaintiffs for $852.64, being the amount due them from Batterson Brothers with interest, and on April 1st, 1913, Olds and Whipple gave due notice of this order to the plaintiffs. On April 16th, 1913, Batterson Brothers were severally and jointly adjudged bankrupts, and on April 30th, 1913, the defendant Seymour was appointed trustee and duly qualified, and ever since has been such trustee.

*Terry J. Chapin* and *Noble E. Pierce,* for the appellants (defendants Olds and Whipple).

*Stanley W. Edwards* and *Richard H. Deming,* for the appellee (defendant Seymour, trustee).

*William M. Maltbie,* for the appellees (plaintiffs).

WHEELER, J. Olds and Whipple assign as error the conclusion of the trial court vesting in the trustee of Batterson Brothers the proceeds of the tobacco crop

raised on their farm. They insist that the ownership of the crop and proceeds thereof was in them, since the relation between Batterson Brothers and them, arising out of their agreement, was either that of cropper, or landlord and tenant, and either relation would vest in them the title and right of possession of the crop and its proceeds.

The intention of the parties, gathered from their agreement as read in the light of its surrounding circumstances, controls the relation established. The finding shows that Batterson Brothers owned the farm upon which the crop was raised, and continued in the actual possession of their farm both before and after the raising of the crop and of the execution of the agreement, Exhibit A. Olds and Whipple had no interest in the farm of Batterson Brothers except such as arose out of Exhibit A, or of the agreement entered into, and were never in its actual possession or occupancy. Exhibit A purported to lease and farm let unto Olds and Whipple the farm of Batterson Brothers for one year. In terms the instrument was a lease. The transaction, which culminated in Exhibit A and the agreement entered into, contains no single characteristic of a "cropper" contract. A "cropper" is one who cultivates the land of another in consideration of the receipt by him of a portion of the crop raised. The cropper has no interest in the land, hence none to the crop raised until it be divided. His possession is that of the owner. *Steel* v. *Frick*, 56 Pa. St. 172, 175; *Harrison & Son* v. *Ricks*, 71 N. Car. 7, 11; 12 Cyc. 979. Batterson Brothers continued in the ownership and possession of their farm. Olds and Whipple never cultivated the farm or had possession of the same. The parties very clearly never intended that Batterson Brothers should become the croppers of Olds and Whipple.

The trustee contends that Exhibit A did not create the relation of landlord and tenant between the parties to it, for the reason that a lease is personal property and title to personal property cannot be transferred without a change of possession, and hence an actual entry was indispensable to the operation of the lease.

We agree that, under the circumstances before us, Exhibit A did not create between the parties to it the relation of landlord and tenant, but we disagree with the reasons given by counsel for the trustee for this conclusion. The common law did require an entry upon land leased in order to give a lessee an estate in the land. The statute of uses has dispensed with this requirement; if the lease is by way of bargain and sale, the constructive possession conferred by the statute supersedes the necessity for an actual entry. Minor & Wurts on Real Property, § 318, p. 272. There was no need of entry under Exhibit A.

If the transaction comprised nothing more than the execution and delivery of Exhibit A, a different question would have been presented. The agreement made contemplated at no time a change of possession, but always the continuance of the lessors in possession. The constructive possession conferred by the statute of uses must give way to the actual agreement of the parties. The law cannot presume the existence of a fact when the agreement of the parties excludes the presumption by expressly providing the contrary. Exhibit A, taken in connection with the agreement then made, was not a lease except in form. It did not convey to Olds and Whipple an interest in the farm, and therefore the crop did not, as a part of the realty, vest in Olds and Whipple. Neither did the agreement purport to give them an interest in the crop.

Olds and Whipple, in addition, contend that Batter-

son Brothers held the proceeds of the sale in trust for them, either as a resulting or a constructive trust, and that Maltbie and Maltbie received the proceeds under the same trust. None of the classes into which resulting trusts are divided are found in the facts of this agreement. Bispham on Equity (7th Ed.) § 79. The agreement clearly shows a contrary intent. Equally ineffective are these facts to raise a constructive trust. Fraud, actual or constructive, is the foundation on which the law raises a constructive trust, and the finding discloses that neither at the time of the agreement, nor of the sale, were Batterson Brothers acting in fraud, or under circumstances from which the law would find fraud. Since Batterson Brothers did not hold the crop or its proceeds as trustees for Olds and Whipple, Maltbie and Maltbie, the agents and attorneys of Batterson Brothers, did not receive the proceeds charged with any trust other than a trust for the benefit of all the creditors of Batterson Brothers.

Whether or not Batterson Brothers were bound under this agreement to turn over to Olds and Whipple these proceeds, and whether their failure so to do was a breach of their agreement, are not the questions here. While they had the title to and possession of these proceeds, they turned them over to Maltbie and Maltbie for a specific purpose, but the ownership remained in them. Had Maltbie and Maltbie, prior to the adjudication in bankruptcy, in compliance with the terms of the order, turned over to Olds and Whipple these funds, we should have had for decision a different issue. The order on Maltbie and Maltbie for a part of these proceeds was invalid against the trustee in bankruptcy. The order did not affect the title to the proceeds, and being made within four months of the adjudication in bankruptcy, and no present valuable consideration having been given therefor, it was not binding on the

trustee. Bankruptcy Act (1898) § 67 *e* (30 U. S. Stat. at Large, p. 564).

Olds and Whipple, under the agreement and Exhibit A, were not the owners of either the crop or its proceeds as against the creditors of Batterson Brothers, and the proceeds of the sale in the hands of Maltbie and Maltbie are the property of the trustee of the bankrupt estate of Batterson Brothers and applicable to all creditors alike, including Olds and Whipple.

There is no error.

In this opinion the other judges concurred.