WILLIAM MONSKI ET AL. *vs.* PAULINE V. LUKOMSKE.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued June 7th—decided July 16th, 1934.

*Paul L. Miller,* for the appellants (plaintiffs).

*Richard T. Dunn,* with whom, on the brief, was *William J. Buckley,* for the appellee (defendant).

AVERY, J.   This case was tried to the court and from the finding the following facts appear:   The plaintiffs, William and Felicia Monski, are husband and wife. The defendant is the former's niece.   On June 1st, 1929, she executed a mortgage and note secured thereby upon her home in Fairfield for $7000, for a loan by him to her in that amount.   Prior to that date, his first wife had died at his home in Jersey City, and the defendant had assisted him in breaking up his household affairs and moving to Bridgeport, where she resided with her husband.   Shortly after William

Monski became a part of her family, he expressed the desire that they occupy a larger house than the one in which they were living where he could have a room of his own, and offered to advance $7000 toward the price of building and furnishing it, informing the defendant that the sum might be considered as a loan upon which interest could be paid, but that eventually he would see that the property was hers for her own. Relying on this statement, the defendant built the house in accordance with plans and specifications procured by him, and on June 1st, 1929, executed to him a mortgage and note for the amount advanced. The parties occupied the house until October 16th, 1930, when William Monski married Felicia. He was a man past middle age, of slight build and mild manners. His wife was a woman of more aggressive character and dominating personality. When she discovered that her husband possessed a note and mortgage of the defendant, she suggested that she be given a half-interest therein. Accordingly, on August 17th, 1931, William assigned the mortgage to Nellie P. Hamilton, who immediately reassigned the same to the plaintiffs as "joint tenants and not as tenants in common," which assignments were recorded in the land records of Fairfield, where the land was situated, but the instruments were executed in the State of New Jersey.

On a visit to Bridgeport, on August 6th, 1932, William told the defendant that his wife Felicia, upon discovering his possession of the mortgage, had already secured a half-interest therein, and that he was convinced that unless something was done immediately, his original plan of eventually giving the defendant the ownership of his home would be completely frustrated. At his request, they visited a lawyer in Bridgeport, who drew for them a quitclaim deed from William Monski to Pauline Lukomske reciting that

"the intention of this instrument is to release, quit-claim and set over unto the grantee herein my entire undivided one-half interest in and to said certain mortgage in the amount of $7000. . . . the indebtedness to me under said mortgage having been fully paid and satisfied." This deed was delivered to the defendant and duly recorded in the land records of Fairfield, but no cash or other valuable consideration passed between the parties and the original mortgage note remained in the custody of Felicia and was not produced; and at no time was any indorsement relative to the transaction noted thereon. Felicia had no knowledge of the transaction until shortly before the bringing of this action. Monski's intention was to execute an *inter vivos* forgiveness of his niece's debt to him coupled with a complete release of his security interest in the land. His motive in executing this release was to assure himself that at least half of his original intention would be carried out before he was forced, against his will by a wife of whom he had a real fear, to give over to her his remaining rights in the property. In 1933, he called at the Lukomske home and asked for the return of the papers, and upon the defendant's refusal to return the release, the plaintiffs brought the present action, asking, by way of equitable relief, for a decree declaring null and void the release of his interest in the mortgage, and for a decree reinstating the mortgage in its entirety. The plaintiffs also sought damages and such other equitable relief as they might be entitled to.

From the judgment of the court in favor of the defendant the plaintiffs have appealed, and in brief and in argument maintain that the judgment of the court below was erroneous for three reasons, which we shall deal with in their order. The first ground of error claimed is that the assignment, made on August 6th,

1932, of William Monski's interest in the mortgage to the defendant, was invalid, for the reason that the assignment to the plaintiffs of August 17th, 1931, was made to them "as joint tenants and not as tenants in common," and having been made in New Jersey is to be construed in accordance with the law of the place where made. The appellants claim that there the right of survivorship is recognized in joint tenancies, and that William could not as one joint tenant make a valid assignment of his interest. It is unnecessary to consider whether or not the law of New Jersey is as claimed by the appellants, because it does not appear that any such claim was made to the trial court as is now made by them in brief and in argument, the claim having been first made in the request for a finding as one of the questions of law which they desired to have reviewed. As the present claim does not appear to have been brought to the attention of the trial court, the question does not properly fall within the scope of this appeal. *Stavnezer* v. *Cooley,* 115 Conn. 452, 454, 161 Atl. 863.

The second contention of the appellants is that as the mortgage note, which was negotiable in form, was not indorsed or delivered to the defendant at the time when the quitclaim deed was executed by the plaintiff of his interest to her and as the conveyance was without consideration, the transaction failed as an unqualified gift of an existing debt from the plaintiff to the defendant. As between mortgagor and mortgagee, the latter is regarded as having the legal title to the land for the purpose of obtaining by ejectment or otherwise possession thereof and holding it as security for the payment of his debt. *McKelvey* v. *Creevey,* 72 Conn. 464, 467, 45 Atl. 4. The conveyance was by quitclaim deed and recited "the intention of this instrument is to release, quitclaim and set over unto the

grantee herein my entire undivided one-half interest in . . . said . . . mortgage . . . the indebtedness to me under the mortgage having been fully paid and satisfied." The quitclaim deed recited a valuable consideration. Its effect, therefore, as a legal act cannot be nullified by proof that no actual consideration passed. *Hartford-Connecticut Trust Co.* v. *Devine,* 97 Conn. 193, 197, 116 Atl. 239; *Andrews* v. *New Britain National Bank,* 113 Conn. 467, 470, 155 Atl. 838. The act of the paintiff in giving to the defendant a quitclaim deed of a one-half interest in the mortgage with the intent to release the debt to that extent contained the elements necessary to constitute an abandonment of the mortgage debt, and may be given effect as such. *Peck* v. *Lee,* 110 Conn. 374, 377, 148 Atl. 133.

The final claim of the appellants, that the attempted gift raises a constructive or resulting trust in favor of the plaintiff, does not require extended discussion. "Fraud, actual or constructive, is the foundation on which the law raises a constructive trust." *Maltbie* v. *Olds,* 88 Conn. 633, 639, 92 Atl. 403. There is no finding of fraud in this case nor of any facts which would justify, much less require, such a finding. Nor is there basis for the claim that a resulting trust arose. "The quitclaim deed stated a valuable consideration and this is sufficient to rebut any claim of trust resulting at the time the deed was made." *Andrews* v. *New Britain National Bank, supra,* 470.

There is no error.

In this opinion the other judges concurred.