ANASTASIA B. WOROBEY *v.* EDWARD SIBIETH ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS AND DICKENSON, Js.

Argued November 10—decided December 15, 1949.

*William L. Beers,* with whom were *Benjamin Diamond,* of the New York bar, and *J. J. Henry Muller, III,* for the appellant (plaintiff).

*Samuel H. Platcow,* with whom was *Edward M. Rosenthal,* for the appellees (defendants).

MALTBIE, C. J. In this action the plaintiff sought to secure a reconveyance of property which she had conveyed to the defendants, claiming that they had agreed with her that they were to pay certain overdue taxes and that when the plaintiff was able to reimburse them for the money so spent and for any sums they might pay upon a mortgage upon the premises they would convey the property back to her. The trial court rendered judgment for the defendants and the plaintiff has appealed.

The determinative issue is whether the trial court erred in excluding a question asked of a witness called by the plaintiff. The trial court found that in 1937 the plaintiff did convey the land to the defendants and that in consideration for it they paid certain interest on the mortgage and the overdue taxes, but that they did not promise to reconvey it; and in its conclusions the court stated that the plaintiff had failed to sustain the material allegations of her complaint by a fair preponderance of the evidence. Because error is assigned in the finding that the defendants did not promise to reconvey the property and the plaintiff requests an addition to the finding in effect asserting that there was such an agreement as was alleged in the complaint, we have examined the evidence. The plaintiff offered evidence without objection which might have justified the court in finding that there was an oral agreement substantially as alleged between herself and the named defendant, to whom we shall hereinafter refer as the defendant, but he testified that there was no promise to reconvey, and that testimony, with other evidence, was a sufficient basis for the find-

ing of the trial court that this was so. The court had to determine, by balancing conflicting testimony, whether the claimed agreement was made. It is out of this situation that the question presented to us on the appeal arises.

The plaintiff called a witness who testified that she was present at a conversation between the plaintiff and the defendant in 1944. She was asked what the conversation was; the defendants objected and the trial court sustained the objection. The plaintiff claimed the testimony on the ground that it would support her contention that the property was to be reconveyed to her when she reimbursed the defendant for the sums he had expended; the defendants' objection was that oral evidence was inadmissible to establish an express trust in real estate. It is obvious that, if the plaintiff would be entitled to relief upon the basis of the oral agreement she alleged, she had a right to put in evidence statements made by the defendant which would throw doubt on his claim that there was no such agreement. The ruling on the admission of the testimony, then, raises the question whether the plaintiff could secure a reconveyance of the property upon the ground she claimed.

Our law is settled that property absolutely conveyed cannot be shown to be subject to an express trust by reason of a parol agreement to that effect. *Andrews* v. *New Britain National Bank,* 113 Conn. 467, 473, 155 A. 838; *Reynolds* v. *Reynolds,* 121 Conn. 153, 160, 183 A. 394; *Hanney* v. *Clark,* 124 Conn. 140, 144, 198 A. 577. There are situations, however, where equity, in order to work out justice between the parties, will itself raise a trust; *Millard* v. *Green,* 94 Conn. 597, 603, 110 A. 177; and such trusts do not fall within the rule stated above. *Ward* v. *Ward,* 59 Conn. 188, 196, 22 A. 149. Within this category fall constructive

trusts, the basis of which is fraud, actual or constructive. *Maltbie* v. *Olds,* 88 Conn. 633, 639, 92 A. 403; *Monski* v. *Lukomske,* 118 Conn. 635, 640, 173 A. 897; *Van Auken* v. *Tyrrell,* 130 Conn. 289, 292, 33 A. 2d 339. It would serve no present purpose to attempt to catalogue the various situations which fall within the designation constructive fraud, even if that were possible. Our early cases are reviewed in *Todd* v. *Munson,* 53 Conn. 579, 589, 4 A. 99. Equity is much more prone to find such fraud in cases where property is bequeathed or devised to one upon his promise to deal with it in a certain way; *Hanney* v. *Clark,* supra, 145; and that is illustrated by our cases of *Dowd* v. *Tucker,* 41 Conn. 197, 205, and *Buckingham* v. *Clark,* 61 Conn. 204, 209, 23 A. 1085. See *McLaughlin* v. *Thomas,* 86 Conn. 252, 258, 85 A. 370. Apart from such situations, we have said that the basis of such trusts may be found in "fraud, misrepresentation, imposition, circumvention, artifice or concealment, or abuse of confidential relations." *Verzier* v. *Convard,* 75 Conn. 1, 4, 52 A. 255; *Reynolds* v. *Reynolds,* supra, 159. Situations falling within this statement where there was no actual fraud, imposition or the like are found in three cases which have been before us. In *Nichols* v. *Nichols,* 79 Conn. 644, 66 A. 161, the mother of several children by her will gave the life use of her real estate to her husband and at his death devised it to them subject to certain charges; after the death of the husband the children entered into a family settlement as to the property, the effect of which was to destroy the interest of one of them, the plaintiff in the action; he received no consideration for surrendering his interest; he was mentally infirm and did not understand the nature of the transaction; we sustained the trial court (p. 656) in its decision that so much of the settlement as destroyed the interest of the plaintiff in the prop-

erty could not be upheld, and we said: "The relief asked for is equitable, and the effect of the judgment is to require the defendant to account as a trustee *ex maleficio*, or trustee of a constructive trust, for the funds which she may properly be regarded as having received from [the plaintiff's] interest in the properties in question."

In *Fisk's Appeal*, 81 Conn. 433, 71 A. 559, a wife was induced by her husband, Eugene Fisk, to make an absolute conveyance of certain real estate to him upon his promise to hold it in trust for her two children, of whom the elder was then twelve years old; both husband and wife were residents of Illinois and the property was located there; we held that the law of Illinois would control, and, after pointing out (p. 438) that under that law an express trust in real estate could not be proved by parol, we said: "The provisions, which have been quoted, of the Illinois statute of frauds have been repeatedly the subject of judicial construction by the courts of that State, and the established doctrine is that if one occupying a fiduciary relation toward another who is in failing health and nearing his end takes advantage of these circumstances to obtain from the latter a conveyance of real estate, on an oral promise to hold the title for the benefit of a third person, and afterward repudiates the obligation thus assumed, he is, notwithstanding the statute, chargeable in equity, on parol proof of such facts, with constructive fraud, from which the law raises a trust *ex maleficio*. *Stahl v. Stahl*, 214 Ill. 131, 73 N. E. 319. Mr. Fisk occupied such a relation toward his wife, and the transaction between them, of which the deed from her formed a part, is therefore subject to the rules of law thus stated. By these, his relations to the appellants became, at least after her decease, of a fiduciary character, and they were equitably entitled to hold him to account."

We then held that Fisk's liability to account was personal and on his removal to this state could be enforced here, and in effect we approved the statement of the Illinois law. The case is no doubt susceptible of interpretation as dealing with a conveyance made in contemplation of death and so analogous to a devise or bequest made upon a promise as to the way in which the recipient will hold and dispose of the property; *Hanney* v. *Clark,* 124 Conn. 140, 144, 198 A. 577; but the present significance of the case is that in it there was a clear abuse of a confidential relationship. Another case illustrating the principle is *Millard* v. *Green,* 94 Conn. 597, 603, 110 A. 177, where we held that stocks purchased by an officer of a corporation in his own name and for his personal benefit with its funds but without authority were subject to·a constructive trust.

The claim of the plaintiff in this case is that she and the defendant were in a confidential relationship so that the real estate was subject to a constructive trust for her. She rests her case on four New York decisions: *Wood* v. *Rabe,* 96 N. Y. 414; *Goldsmith* v. *Goldsmith,* 145 N. Y. 313, 39 N. E. 1067; *Harrington* v. *Schiller,* 231 N. Y. 278, 132 N. E. 89; and *Foreman* v. *Foreman,* 251 N. Y. 237, 167 N. E. 428. In each of the first three of these cases, the transaction out of which a constructive trust was held to have arisen was one between a mother and her son or daughter; in the *Wood* case, it is said (p. 426): "It was a transaction between parent and child, a relation which, if not fiduciary in the strict sense, was nevertheless one ordinarily involving the greatest confidence on one side, and the greatest influence on the other." In the *Foreman* case, a husband paid the purchase price of land title to which was taken in the name of his wife because he wanted to keep it separate from the property

involved in his business, and the testimony was that she promised to give him a deed on demand and dispose of the land or its proceeds in accordance with his wishes; while the court speaks of the transaction as one involving a confidential relation, the situation under our law would be one of a resulting trust, with a promise equivalent to the obligation which equity would impose and which might therefore be proven, though it rested in parol. *Bassett* v. *Pallotti, Andretta & Co., Inc.*, 117 Conn. 58, 62, 166 A. 752.

What relations between parties will be deemed by equity to be so confidential as to be a basis upon which it will raise a trust is, of course, impossible of definition. Analogies can be found in those cases where the relationship between the parties is such that the burden is upon the recipient of the property to prove the transaction to be fair and equitable. Where there is no proof of an actual confidential relationship and the law looks only to a presumption of fraud arising out of the relationship of the parties to each other, that relationship must be one where there is ordinarily a special trust and confidence and the likelihood of the exercise of personal influence and control such that one would expect of the other fair dealing and mutual consideration. *Cowee* v. *Cornell*, 75 N. Y. 91, 100. Thus, in finding error in a decision setting aside a conveyance on the ground of fraud, we spoke of the "confidential relations imposed by operation of law or voluntarily assumed," such as exist between a parent and child, attorney and client, guardian and ward, trustee and cestui que trust, but we said: "We have before us a contract of sale, the parties to which are of full mental capacity; the vendor believes the vendee to be her friend, and that the friendship, dating from the time when he served her husband as a laborer, has continued

unbroken during the seven years which had elapsed since that service terminated; and she believes him to be honest because of his fidelity. Although friends in fact, in law and equity they were strangers and stood at arms length in the matter of contract; for friendship is unknown to law or equity; in it neither finds any relation involving special confidence. He had not by being a friend become the guardian of her interests in any such sense as to impose upon him a legal duty to sacrifice his own to theirs." *Hemingway* v. *Coleman,* 49 Conn. 390, 392.

That statement applies in the situation before us. The only facts appearing in the finding upon which any claim of a confidential relationship could possibly rest are that the plaintiff and the defendant are both Russian, that they are unable to read or write English and speak it with difficulty, that they have known each other for a long time, and that the defendant is the godfather of one of the plaintiff's children. The conveyance was made upon a valuable consideration; the plaintiff was personally liable for the payment of the overdue taxes; General Statutes § 1842; *Cromwell* v. *Savage,* 85 Conn. 376, 377, 82 A. 972; the note secured by the mortgage on the premises was executed by her; and when the defendant paid the taxes and the interest on the note he discharged obligations for which she was primarily liable. There is no indication in the record of any actual fraud, imposition or duress exercised by him. The court has not found as matter of fact that the parties stood in a particularly confidential relationship to each other, and upon the facts found we could not conclude that to be so as matter of law. To hold that in such a situation as existed in this case equity would raise a constructive trust would go far to destroy the rule that an express trust in real

estate cannot be proven by parol. Had the court found that the defendant had made the agreement the plaintiff claimed, it could not have reached any other conclusion than that there was an express trust resting in parol; and, if proven, the agreement would not have been enforceable. The ruling of the court excluding testimony to corroborate the plaintiff's claim as to it was not reversible error.

There is no error.

In this opinion the other judges concurred.