[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above entitled lawsuit was instituted in July 1990 by Jose Albuquerque who, at the time, was 91-years old and living in Florida with his son Anthony, a former Windsor resident, who had moved to Florida in 1986. The defendant is Joseph Albuquerque, the grandson of Jose and son of Anthony. Mr. Albuquerque Sr. (Jose) died after suit was brought, and his son Anthony, as executor of the estate, continues the action in his fiduciary capacity and as sole beneficiary of the estate.
 I.
After emigrating to the United States in the 1920's Mr. Albuquerque Sr. and his wife lived for many years in Rhode Island. In 1982, when their real estate was taken through eminent domain proceedings, the couple moved to Connecticut CT Page 7645 and resided, by agreement of all concerned, with the defendant in a one family residence in Middlefield. The evidence shows that the defendant's purchase of the Middlefield property resulted, in part, from a gift of approximately $68,000 by the decedent.
The evidence presented discloses that at the time of his relocation to Connecticut the decedent's estate consisted of about $100,000 of cash assets over and above the $68,000 which had been donated toward purchase of the Middlefield real estate. Additionally, he and his wife were each the owners of a one-third survivorship interest in the Middlefield property, the remaining one-third interest being owned by the defendant. Both Mr. and Mrs. Albuquerque Sr. were the recipients of social security benefits, and the former also received monthly pension payments. Their combined income was about $1,100 each month.
The decedent's wife died in 1987, after which he continued to reside in Middlefield with the defendant and his wife. Late in 1989, the decedent, with little or no advanced planning or notice, flew to Florida with the plaintiff (Anthony) for what ostensibly was to be a visit of short duration. The decedent, however, continued to live with the plaintiff, did not return to Connecticut, and died a resident of Florida on January 8, 1993.
On February 5, 1990, about two months after his arrival in Florida, the decedent executed a new will (Pl. Exh. 26), revoking a prior 1983 will (Def. Exh. 5). Under the terms of the new will, which was in effect at the time of his demise, Mr. Albuquerque's entire estate was left to the plaintiff. The plaintiff's wife was named contingent beneficiary in the event the plaintiff did not survive his father. Under the terms of the prior will the defendant and his sister, as a result of the death of the decedent's spouse, would have become sole beneficiaries. The latter will made no mention of the plaintiff.
It is clear from the evidence that at the time of the decedent's removal to Florida, apart from his monthly income, and a forgotten account in a Rhode Island Bank, his estate was essentially valueless. The bank account was subsequently discovered by the plaintiff who closed the account and received the full amount of the approximate CT Page 7646 $7,000 balance on deposit.
In December 1990, the decedent while a pedestrian was struck by an automobile and seriously injured. His injuries resulted in extended periods of hospitalization and convalescence and substantial medical bills and expenses. A liability claim was advanced in his behalf by the plaintiff, and after payment of all medical special damages a settlement of the claim in the amount of $142,000 was reached. The plaintiff did not retain the services of an attorney in pursuing the claim for his father.
It was the plaintiff's testimony that his father wished him to have the settlement proceeds, and, in fact, the entire amount was paid to the plaintiff or for his benefit. The plaintiff concedes that he did not file a federal gift tax return after receipt of the funds (I.R.C., Sec. 2501 et seq.), and he testified further that the inventory value of the decedent's estate as filed with a Florida probate court was about $1,000.
The action instituted against the defendant is in three counts: breach of fiduciary relationship, conversion, and fraud. A fourth count against the defendant and his wife charges the two with engaging in a fraudulent conveyance of real estate. The real estate in question is situated at No. 44 Hopyard Road, East Haddam, and was acquired jointly in survivorship by the defendant and his wife in December 1989 for an alleged consideration of $255,500. The defendant, it is alleged, allowed the transfer of a joint interest to his wife, without consideration emanating from her, in order to defraud the plaintiff's decedent.
In general terms, the first three counts of the complaint assert that the defendant, through unlawful conduct and by virtue of his relationship with the decedent and his advanced age, gained control of his estate, including acquisition of the decedent's interest in the Middlefield realty, and converted all of the assets thereof to the defendant's own personal use and benefit. The suit seeks money damages, including exemplary relief, and the imposition of a constructive trust on the East Haddam real estate, which, it is claimed, the defendant, an unemployed former police officer, was only able to acquire through unlawful invasion and use of such assets. CT Page 7647
The plaintiff has at trial endeavored to portray his son as one who mistreated the decedent, particularly during the years of his residence in Middlefield. He contends that the decedent was ill-fed, often unsupervised and uncared for despite his advanced age, and severely restricted in terms of his freedom of movement about the property. Such evidence comes almost exclusively from the plaintiff himself, based on what he asserts were complaints to him by the decedent while living with him in Florida, and from a video taping of the decedent arranged by the plaintiff and taken in Florida. The plaintiff offered no corroborative testimony. Contrariwise, evidence offered by the defendant, from his sister, and from disinterested witnesses who knew and observed the decedent in his Middlefield environment, paints a quite different picture. Such testimony shows the defendant to be well nourished and cared for by the defendant and his wife, well-adjusted, and very content with his life, apart from some unhappiness associated with the death of his wife after a long marriage. He was, it would seem, in control of his faculties and capable of managing his own affairs, including his bank deposits, with a degree of self-reliance and independence.
The decedent is consistently described as a generous man who had a great love and affection for his grandchildren, especially the defendant. On the contrary, the decedent had a serious falling-out with his son, the plaintiff, when in 1982 the latter attempted to have himself involuntarily appointed conservator of his father's estate. The plaintiff was motivated by a belief that his son was attempting to gain full control of his grandfather's estate.
The plaintiff's attempt to establish the conservatorship was vigorously opposed by the decedent and by the defendant and his sister who were abhorred by what they deemed a callous disregard of the feelings and concerns of their grandfather. The application for appointment was unsuccessful, but the emotional scarring inflicted on the decedent and his grandchildren remained.
 II.
A. CT Page 7648
It is the court's finding that although there existed a close personal relationship between the decedent and the defendant, this relationship did not give rise to a superiority and power of influence in the defendant over his grandfather. Harper v. Adametz, 142 Conn. 228, 225 (195). "A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the others." Dunham v. Dunham, 204 Conn. 303, 322 (1987). While their relationship was a loving one between grandfather and grandson, the court is not persuaded that the fiduciary and confidential character above defined was present therein.
There being no proof of an actual confidential relationship, any presumption of illicit conduct of the defendant must be predicated on "a special trust and confidence and the likelihood of the exercise of personal influence and control. . . ." Wrobley v. Sibieth, 136 Conn. 352,359 (1949). There is no credible evidence to permit such a conclusion.
 B.
There is, as well, no probative evidence in support of the plaintiff's claim (Second Count, para. 12) that the defendant took personal assets of his grandfather and converted and disposed of those assets for his own use and benefit. The court is persuaded that the plaintiff's decedent, as previously mentioned, was a most generous benefactor who possessed a great love and affection for both of his grandchildren which he manifested in substantial transfers of his cash assets. The defendant's acquisition of residential realty in Middlefield, and more recently in East Haddam, was achieved in large measure through intended financial assistance from the decedent. The defendant was a natural object of his grandfather's bounty, and a donative intent, particularly in light of the donor's generous spirit, may be presumed. Farrah v. Farrah, 187 Conn. 495,500 (1982).
That the decedent's estate was substantially depleted by late 1989 is not surprising in view of his generosity and CT Page 7649 substantial medical expenses not covered by health insurance for which he was responsible as a result of illness and physical setbacks during the 1980's. The decedent's refusal to treat his son, the plaintiff, with the same degree of generosity shown to the grandchildren (i.e., prior to his removal to Florida) is quite understandable in view of the animosity of the decedent toward his son resulting from the latter's failed conservatorship bid. Moreover, the plaintiff's complete control of his father's finances during more than three years while he lived in Florida, including a questionable gift of $142,000 by a man more than 90-years old and in failing health, tends to implicate the unclean hands doctrine when one evaluates the merits of the plaintiff's claims. See Boretz v. Segar, 124 Conn. 320,323-24 (2938); Cf. Cohen v. Cohen, 182 Conn. 183, 204
(1980).
 C.
The allegation of fraud in the making of false, misleading, and untrue representations, inducing the decedent, thereby, to transfer his assets to the defendant, is unsupported by the evidence. What little evidence there is, resolving in the plaintiff's favor all benefit of doubt, does not elevate such evidence to the high standard of proof required. "It is well established that common law fraud must be proven by a higher standard than a fair preponderance of the evidence." Kilduff v. Adams, Inc.,219 Conn. 314, 327 (1991). Evidence to support a finding of fraud must be "clear and satisfactory" or "clear, precise, and unequivocal." Id., 327-28.
Testimony and documentation which the plaintiff has presented fail to meet the high standard required.
 D.
The plaintiff seeks to set aside as fraudulent a conveyance of residential real estate as hereinbefore described.
"[A] party seeking to set aside a conveyance as fraudulent bears the burden of proving either: (1) that the conveyance was made without substantial consideration and rendered the transferor unable to meet his obligations; or CT Page 7650 (2) that the conveyance was made with a fraudulent intent in which the grantee participated." Watson v. Watson,221 Conn. 698, 707 (1992). The "[f]raudulent intent must be proved, if at all, by clear, precise and unequivocal evidence and such] standard of proof applies to intrafamilial conveyances." Tyers v. Coma, 214 Conn. 8, 11
(1990).
Even were the court permitted to apply a less stringent standard of proof, there is no evidence that the creation of a joint survivorship interest in his wife rendered the defendant unable to meet his obligations, or that the former as grantee thereof participated in a fraudulent scheme.
 III.
For all of the reasons set forth above, the plaintiff has failed to prove any of the several causes of action set forth in his complaint, and, accordingly, judgment may enter in favor of the defendants.
GAFFNEY, J.
Judgment entered in accordance with foregoing Memorandum of Decision.
Michael Kokoszka, Chief Clerk