[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action brought in five counts by Nicholas V. Polletta as against the Executrix of the estate of his deceased father Nicholas O. Polletta, and against said executrix Chiarina Colucci individually. The complaint does not specify which of the counts are directed to Chiarina Collucci individually, and which are directed to her as executrix.
The first count claims specific performance of a contract with the decedent to devise real estate to the plaintiff. The second count claims a constructive trust be imposed upon the devise of the property made to Chiarina Colucci, sought to be imposed in favor of the plaintiff, because of a claimed relationship of trust and confidence and/or a special relationship between the decedent and Chiarina Colucci. The third count claims a constructive trust claiming that Chiarina Colucci will be unjustly enriched at the expense of the plaintiff if she retains the property. The fourth count claims return of use and occupancy payments made by the plaintiff, which he has been making since July 1, 1994, which payments are required by an order of the Housing Court. The fifth count claims payment from the estate in the amount of $4,861.23 for reimbursement of funeral expenses.
The action was commenced by service of process on March 3, 1995 following a jury verdict in the Superior Court on February 9, 1995 rejecting this plaintiff's appeal from the order of the Probate Court admitting to probate the Last Will and Testament of his father, the decedent Nicholas O. Polletta. This will was executed June 2, 1992 (Case No. 0115798, Superior Court, Judicial District of Waterbury).
By special interrogatories the jury in said probate CT Page 5495-NN appeal determined that the decedent had the mental capacity to make the will; that the will was validly and lawfully executed; that Chiarina Colucci did not have a fiduciary or confidential relationship with Nicholas O. Polletta at the time the will was executed; and that the decedent's will was not procured by the exercise of undue influence upon him by Chiarina Colucci.
The will which was the subject of that appeal, which will was dated and executed June 2, 1992, gave to Chiarina Colucci all the rest residue and remainder of the decedent's estate, both personalty and realty (after payment of debts, costs and expenses of administration) if she survives him; but if she does not survive him, to his three children, Nicholas V., Noel, and Gregory, in equal shares per stirpes. The decedent had executed an earlier will on April 4, 1989 devising to his son, the plaintiff Nicholas V., his residential premises at 774 Hamilton Avenue, Waterbury, and giving to his sons the plaintiff Nicholas V., Noel A. and Gregory all the rest, residue and remainder of his property.
This court finds the following facts. For the purposes of ease of identification the deceased father will at times be referred to as Nicholas Sr. and the Plaintiff son as Nicholas Jr.
Mrs. Chiarina Colucci was a close personal friend of Nicholas Sr. She was born in Italy in 1940 and came to America in 1959. She was married to an American citizen. Nicholas Sr. was in the travel business. They met in 1959. He would arrange travel tickets for her to travel back to Italy once every year or two for visits.
Mrs. Collucci's father had been in the construction business in Italy and she had acquired building and construction skills as an adolescent in Italy. Her marriage ended in divorce in 1979. Shortly thereafter Nicholas Sr. asked her to do, and she did accomplish miscellaneous such work at the house of Nicholas Sr. at 774 Hamilton Avenue, including painting, cement work, masonry and the like. This type of work continued on and off throughout the course of their friendship. Nicholas Sr.'s wife passed away in May 1979.
Mrs. Colucci learned of the death of Mrs. Polletta when CT Page 5495-OO she went to buy tickets for a vacation in Italy. It was at that time that Nicholas Sr. asked her to do the aforementioned odd jobs. After a time Nicholas Sr. asked Mrs. Colucci if he could come to her house to eat evening meals. Mrs. Colucci had a full time job at a manufacturing company. Nicholas Sr. disliked cooking and Mrs. Colucci was obviously quite competent in cooking Italian food. Nicholas Sr. thereafter would take all of his evening meals at Mrs. Colucci's house. After dinner he would relax and watch television at Mrs. Colucci's home. They became very close friends, and cherished the company of each other. They would shop together, and share the cost of purchasing the food.
In 1983 Nicholas Sr. fell and injured himself. He spent a brief time in a nursing home. Mrs. Colucci visited him every day. When he was released from the nursing home he asked if she would bring the evening meal to his home each day. Thereafter each day she would prepare the evening meal, Monday through Saturday, and bring it to his home. The plaintiff Nicholas Jr. shared in the consumption of some of this food. Additionally, she would bring Nicholas Sr. coffee each morning, as he was fond of Italian coffee. Nicholas Sr. would give her $300 per month for the cost of the food. She would take him on errands at his request. She would write out checks to pay his household and personal bills from money that he gave to her for that specific purpose, and at his specific request.
Nicholas Sr. had sustained a service-connected injury during World War One. For the rest of his life he felt that he had been denied rightful benefits by the Veterans Administration. In May 1992 he determined to renew his pursuit of these claims. Mrs. Colucci arranged for his transportation to the Veterans Administration Hospital in West Haven. At this time he was also suffering the effects of an injury from a recent fall down. He was admitted to the VA Hospital. Mrs. Collucci visited him every day that he was in the hospital.
At that time he determined to make out a new will. He contacted an attorney requesting that the attorney come to the VA Hospital. The attorney was unable, or unwilling, to do so. He made an appointment to see Attorney Mark Ianonne at the attorney's office. He was able to get a pass from the VA hospital for this purpose. Mrs. Colucci drove him to the CT Page 5495-PP office. She did not participate in the attorney conference in any fashion.
Both Attorney Iannone and his associate Attorney Brian Tynan testified in this proceeding. The attorneys collectively spent 2 1/2 hours with Nicholas Sr. Nicholas Sr. was very alert. He was very clear in his desire that his entire estate be devised to Mrs. Colucci, and that it be hers absolutely without any commitment or condition that she share the estate with anyone else. He discussed with the attorneys the fact that he had known her for fourteen years, was grateful for the aid and assistance that she had provided for him.
Nicholas Sr. gave the will to Mrs. Colucci in a sealed enveloped. She opened the envelope after his death, and gave it to the probate court.
While at the VA Hospital Nicholas Sr. asked Mrs. Colucci if she would come and reside with him at his home upon his discharge. She declined. He then asked if he could go to her house. She said yes. She cared for him at her home until the date of his death, some four months later. She modified the house to install a bathroom for him.
She was appointed a voluntary conservator, he having chosen her for that role. She continued to take him to his house to pick up the mail. The bills were left on the table by Nicholas Jr., for pick-up by Nicholas Sr. She also installed a ramp at the back of the house for his access. The V.A. trained her to administer therapy to him. Toward the end she had to dress him, shave him and wash him.
Nicholas Sr. never did return home, as he did not choose to live with the plaintiff Nicholas Jr. Occupancy of the house was the subject of a summary process action which was settled by the plaintiff Nicholas Jr. paying $625.00 per month, for his continuing "use and occupancy." Apparently Nicholas Jr. also paid for his own utilities during this time.
The court credits the witnesses who testified at these proceedings that Nicholas Sr. was consistently bright and alert and that he was clearly mindful of the aid and comfort which Mrs. Colucci had provided to him over those past thirteen years. Mrs. Colucci did not ask for or receive CT Page 5495-QQ compensation for the time and effort devoted to the performance of those services, which took up a substantial part of what otherwise would have been her leisure time. The relationship is best summed up by the testimony of Mrs. Colucci to the effect that she and Nicholas Sr. were like a family.
The court finds the following facts as concerns Nicholas Jr. and his relationship with his father Nicholas Sr. and the property at 774 Hamilton Avenue. The plaintiff is one of three sons of Nicholas Sr. He is a 1965 graduate of John Hopkins University. He has a 1967 Masters Degree from the London School of Economics and a 1973 Doctoral Degree. Thereafter he returned to Waterbury, at which time he assisted Nicholas Sr. in convincing the State of Connecticut to exchange the property of Nicholas Sr. at 748 Hamilton Avenue for the property located at 774 Hamilton Avenue, which is the subject of this suit. This occurred in 1976. The house at 774 Hamilton Avenue was moved to another part of that property.
The plaintiff claims that he contributed $6,000 to $6,500 to the moving of the house and to place it on a new foundation. He claims to have physically helped with the construction of the foundation. The plaintiff, though meticulous in keeping financial records, produced no documentation of this alleged contribution. The plaintiff does not claim that there was any agreement between he and Nicholas Sr. that Nicholas Jr. would receive any right, title or interest in the house in consideration of any such contribution of money or of any labor.
The decedent Nicholas Sr. had informed Mrs. Colucci that he, Nicholas sr., hired everyone and paid everyone himself. The court finds that Nicholas Jr. has not proven the dollar amount of this contribution, although the court credits his testimony that some contribution of funds and effort did occur.
The plaintiff took up residence in the house with his mother and father, Mr. and Mrs. Nicholas Sr. He still resides in the house. He is engaged in the occupation of Title Searcher and maintains his office — work place in the house. He contributed fifty dollars per week to his mother and fifty dollars per week to his father. When the mother died in 1979 CT Page 5495-RR he contributed the $100 per week to his father. Although the decedent told Mrs. Colucci that the son was not contributing anything towards the house, the court finds that this testimony is nebulous as to the consistency of such contributions. The court finds that the plaintiff did contribute $100 per week for most of the time that he was living there.
The court finds, however, that these payments were less than fair value for use and occupancy, bearing in mind the stipulated order of $625 per week as ordered by the Housing Court, and bearing in mind his use of the property for residence and additionally for office space and use.
The court does not credit the plaintiff's contention that he also purchased groceries on any significant basis for family use.
The plaintiff Nicholas Jr. was told by the father Nicholas Sr. that Nicholas Sr. had made a will in April 1989 leaving the house to him, Nicholas Jr., shortly after the execution of that will. This was not a bargained for event and was not accomplished in exchange for any consideration demanded of, or offered by the plaintiff, either present or future. At most it was a declaration of a then present intent on the part of Nicholas Sr. to make a testamentary gift to the plaintiff upon the death of Nicholas Sr.
At a point in time thereafter it was discovered that there was a small tax lien on the property. The plaintiff, at his father's request, negotiated and paid the tax lien of $280.40. In 1991 the father asked the defendant to pay the real estate tax of $448.09 for the list of 1990 which the plaintiff did. The tax bill for the subsequent list of 1991 arrived when the father was not in residence. The plaintiff sent in a payment of $448.09, but was informed that the tax had been paid. The father had made the payment.
The plaintiff also paid certain bills for plumbing work — 3/7/89 $264.78; 11/16/90 $459.39; 1/6/92 $195.19; 2/3/92 $66.30. This work was arranged for by the plaintiff Nicholas Jr. In 1992 the plaintiff Nicholas Jr. commenced paying the gas bills, January 10, 1992 to June 18, 1992.
In the autumn of 1992 the plaintiff Nicholas Jr. CT Page 5495-SS contracted to have three exterior doors replaced with three pre-hung steel door units and to close up one door opening. The court notes that this work was billed November 20, 1992, fifteen days after the father had passed away. The father had not been in residence for the past four months, and the bill was incurred when the plaintiff was the sole occupant under the use and occupancy order of the Housing Court. No reason is advanced for replacement of the doors, such as deterioration or the like. The court does take note of the fact that steel doors are an effective device for occupant security. The plaintiff paid some of the water bills for 1989, 1990, 1991, 1992, and the father paid some of the utility bills during this period.
Subsequent to the execution of the will in 1989, which would have devised the property to the plaintiff, the decedent determined to add a greenhouse to the house. This was subsequent to the time that the plaintiff knew of the contents of that will. The plaintiff son stated his firm opinion to the father that this was not a good idea. The father, in complete disregard of the son's feelings on this matter, had the greenhouse constructed at a cost of $16,000, which substantially depleted the father's assets. The court finds that the father's attitude as concerns this event is completely contradictory to the contended interpretation by the plaintiff that when the father said "the baton has passed to you", that means that some type of ownership, dominion or control had legally or equitably passed to the son. Furthermore, Attorney Hillary Horrochs, retained by the decedent for the eviction action, testified that the decedent told her that there was no agreement between the decedent Nicholas Sr. and the plaintiff Nicholas Jr. about a transfer of ownership of the house.
Although the father and the son had become emotionally distant in recent times, as reflected by the father's statement in the VA Record of May 26, 1992 that the son is distant and not so concerned about the plaintiff's welfare, there is nothing to indicate that Mrs. Colucci did or said anything to cause the relationship between father and son to be strained in any fashion. The court further notes that this new will of June 2, 1992 provides that all three of the children, Gregory, Noel, and the plaintiff Nicholas Jr. would be equal beneficiaries in the event Mrs. Colucci did not survive Nicholas Sr., which does not indicate any animosity or CT Page 5495-TT hostility on the part of Nicholas Sr. as concerns the plaintiff or his other two children.
The court now addresses the claims of the plaintiff as set forth in the complaint.
I BREACH OF CONTRACT
The plaintiff claims that there exists an oral contract between Nicholas Sr. and Nicholas Jr. that Nicholas Sr. would transfer the real estate, consisting of land and house, to the plaintiff Nicholas Jr., and now seeks specific performance of said alleged contract.
The plaintiff contends that an oral contract was entered into by Nicholas Sr. and Nicholas Jr. to the effect that Nicholas Sr. would devise the real estate to the plaintiff upon the death of Nicholas Sr. The plaintiff claims that a contract to devise was entered into by virtue of "all that he had done and would do in the future." "All that he had done" refers to the plaintiff's efforts on behalf of his father and mother in arranging for the exchange of property with the State of Connecticut and some efforts, financial and physical to assist in the acquisition and moving of the house. There is no claim that these past efforts and/or expenditures were made in return for a promise to convey the real estate. "Something given before a promise is made, and therefore without reference to it . . . does not constitute legal consideration." Sandelli v. Duffy, 131 Conn. 155, 157 (1944). Past gratuities on the part of the plaintiff would not be sufficient to constitute consideration for any later unilateral declaration to convey.
The execution of a will conveys nothing.
"A will does not confer any present right at the time of its execution . . . . Nothing vests by reason of such an instrument during the life of the testator." Zanoni v.Hudson, 42 Conn. App. 70, 75 (1966). Standing alone, the provisions of a will are nothing more than an indication by the decedent of his then intention to make a future gift to a named beneficiary. Such present intention is legally capable of change at any time prior to death.
The plaintiff further claims that because he expended CT Page 5495-UU funds towards the maintenance of the house subsequent to the 1989 will, after having learned of the devise in that will directing that he be given the property, that these expenditures were in consideration of a contract to give the property to him. It is not claimed, however, that there is any specific agreement that if he made these expenditures the property would pass to him. He relies upon a proffered statement of the testator that "the baton has passed to you" when asked to pay a modest real estate bill and a small tax lien.
The plaintiff does not claim, and properly so, that this statement has the legal effect of acknowledging and accomplishing a retrospective transfer of title to the plaintiff. A conveyance of land may only be accomplished by the execution of a writing in compliance with the requirements of General Statutes § 47-5. No claim is made or may be properly made that the execution of the 1989 will was in fact the execution of a deed. See also Dennen v. Searle, 149 Conn. 126
(1961). No deed was either made out or delivered to the plaintiff. See Costello v. Costello, 136 Conn. 611, 615
(1950). Furthermore, the decedent's remaining in possession of the property and continuing to exercise dominion over the property, including the contentious construction of the greenhouse, belies any potential contention that the decedent had conveyed the property to the plaintiff.
Finally, to the extent that the plaintiff contends that the decedent's request to pay a small real estate bill and tax lien, and some of the utility bills, constitutes a contract that the property would be transferred to the plaintiff by will, such contention is not supportable. The evidence clearly demonstrates that the father and son shared in the payment of utility bills and the taxes. It is to be expected that adults living together will share in the continuing costs of maintenance of the property. This is particularly so where Nicholas Sr. is described by Nicholas Jr. as "elderly and ailing" (Exhibit 6), and had minimal retirement income; and where Nicholas Jr. is regularly employed and has very substantial cash assets. (Exhibit 13)
Contributions of the plaintiff, $100.00 per week, were modest at best, bearing in mind the size of the house and the plaintiff's occupancy as both his residence, and his office for use as a title searcher. The use and occupancy charges CT Page 5495-VV assessed by the Housing Court, $625.00 per month, apparently plus utilities, well illustrate this proposition. Further, the plaintiff candidly testified that he would have paid some of the tax charges even if he did not think that he was going to get the house.
The plaintiff seeks to prove an oral contract for the sale of real estate. The defendant denies the existence of any such contract. The defendant further raises the matter of the statute of frauds, General Statute § 52-550. The statute bars action based upon
 "(4) upon any agreement for the sale of real property or any interest in or concerning real property."
The plaintiff is correct in his assertion that part performance of an oral contract for the transfer of real estate can remove an oral contract for the otherwise prohibition of the Statute of Frauds. The plaintiff is correct in his contention that specific enforcement of such a contract is not violative of the Statute of Frauds. See Ubyszv. Di Pietro, 185 Conn. 47, 55 (1981). Nor would the enforcement of real estate contracts be violative of the Statute of Wills, General Statutes § 45a-251.
There must, however, be a valid oral contract in the first instance for the element of part performance to be operative. This court finds that there was no such contract.
 "We have held that acts on the part of the promisee may be sufficient to take a contract out of the statute `if they are such as clearly refer to same contract in relation to the matter in dispute.'"
Ubysz v. Di Pietro, supra p. 54.
 "In Connecticut, in order to recover on a claim arising out of alleged services rendered to a decedent, the plaintiff must prove his case by `clear and satisfactory' proof."
Ubysz v. Di Pietro, supra, p. 58. CT Page 5495-WW
The payment of some bills by the plaintiff, to the extent of approximately $4,800 for taxes, heat, water, medical and plumbing repairs, under this set of circumstances, does not support the plaintiff's contention that these payments were in consideration of a contract to transfer to him the piece and parcel of real estate, which is inventoried at a value of $135,000. The entire estate is inventoried as $139,315.31) The evidence falls far short of establishing that there was part performance of a claimed contract.
The court notes, in passing, that the claim for an interest in real estate is not subject to the provisions of General Statutes § 45a-395, referenced to in common parlance as the statute of non-claim. See Dennen v. Searle, 149 Conn. 126,140 (1961). This proposition was raised as a Special Defense by the defendant.
THE COURT FINDS FOR THE DEFENDANT ON THE FIRST COUNT OF THE COMPLAINT.
 II
Claims for a Constructive Trust
The second count alleges a relationship of trust and confidence and/or a special relationship between the decedent and the defendant Chiarina Colucci, and hence asserts claims for a Constructive Trust.
The plaintiff states, in his reply brief, that "His claims are not based upon undue influence, nor upon fraud or breach of confidential relationship by the defendant . . ." This is stated in defense of the defendant's claim of collateral estoppel by virtue of the determination of certain issues by the jury in the will contest.
As stated initially in this decision, the jury in the will contest case did find that the decedent had the mental capacity to make the will, that the will was validly and lawfully executed, that Chiarina Colucci did not have a fiduciary or confidential relationship with the decedent and that the decedent's will was not procured by the exercise of undue influence upon him. CT Page 5495-XX
This court, having evaluated the evidence, which evidence to a large extent is the type of evidence which would be expected to be produced in the will contest, the court is independently in complete accord with those findings of the jury in the will contest case. Hence the court deems it unnecessary to determine whether the doctrine of collateral estoppel, res adjudicata or issue preclusion would be applicable to this litigation.
 "In order for a constructive trust to be imposed the plaintiff must allege fraud, misrepresentation, imposition, circumvention, artifice or concealment or abuse of confidential relations."
Wing v. White, 14 Conn. App. 642, 644 (1988), Worobey v.Sibieth. 136 Conn. 352, 356 (1949).
It has been stated that "where a confidential relationship has been established, there is substantial authority that the burden rests on the party denying the trust — and then by clear and convincing evidence to negate such a trust." Hieble v. Hieble, 164 Conn. 56, 62 (1972). However, "What relations between parties will be deemed by equity to be so confidential as to be a basis upon which it will arise is, of course, impossible of definition." Worobey v. Sibieth,136 Conn. 352, 359 (1949).
Friendship is not of itself a basis for a conclusion of a "confidential relationship."
 "Although friends in fact, in law and in equity they were strangers and stood at arm's length in the matter of contract, for friendship is unknown to law or equity, in it neither finds any relation involving special confidence."
Worobey v. Sibieth, supra, p. 360.
The evidence in this case clearly establishes the fact that the decedent Nicholas Sr. was his own person, so to speak. He was intelligent and determined, and made his own decisions. Whatever services were performed for him by Mrs. Colucci were done at the direction of Nicholas Sr. Although CT Page 5495-YY the relationship was that of a long-standing and close friendship this court concludes that it is absolutely clear that there was no "abuse of a confidential relationship." There was no abuse of a relationship of friendship, let alone an abuse of a proffered confidential relationship. There was no personal influence or control, no fraud, misrepresentation, circumvention, artifice or concealment so as to call for the equitable imposition of a constructive trust. Worobey v.Sibieth, supra, pp. 359, 360. THE COURT FINDS FOR THE DEFENDANT ON THE SECOND COUNT OF THE COMPLAINT.
 III
Constructive Trust based upon a claim of unjust enrichment.
This count repeats the allegation of the second count and adds a claim that Chiarina Colucci will be unjustly enriched at the expense of the plaintiff if a constructive trust is not imposed.
It appears to be the plaintiff's contention that even if the elements of a constructive trust are not proven, as determined in the preceding analysis, yet a trust should be imposed because otherwise the defendant would be "unjustly enriched." The plaintiff cites Cohen v. Cohen, 182 Conn. 193
(1980). That case pertains to a devise by mother to son "with the understanding that the defendant would reconvey the interest back to his mother upon her request." As the count points out, on page 201, "When the purchase money for property is paid by one and the legal title is taken in the name of another, a resulting trust ordinarily arises at once, by operation of law, in favor of the one paying the money . . ."
Both the doctrine of resulting trust and constructive trust are equitable remedies to prevent unjust enrichment caused by the devisee or grantee's equitably wrongful retention of property. There is no unjust enrichment if the facts do not support an equitable duty, a duty in equitable conscience, to convey.
There is evidence that at the time of the drawing of the will the decedent had hoped that Mrs. Colucci split the estate with the decedent's children. However, the decedent was emphatic, in his discussions with Attorney Tynan and Attorney Iannone in drawing the will, that it was to be hers absolutely CT Page 5495-ZZ to do with as she chose. That it go to her with noconditions. The attorneys are well-versed in the preparation of trusts, and trusts could have been drawn and executed had the decedent wished to do other than his adamant wish that the property go to Mrs. Colucci free and clear of any type of obligation.
 "It is likewise true that precatory words cannot cut down or diminish an estate given absolutely."
Fidelity Title Trust Co. v. Clyde, 143 Conn. 247, 253
(1956).
This is so even if discretionary words are contained in the will itself, such as:
 ". . ., and then directed him `at his earliest discretion' to provide for her grandchildren. The use of the quoted phrase did not diminish the absolute fee simple estate devised to the defendant."
Cooper v. Cavallaro, 2 Conn. App. 622, 627 (1984).
The fact that Mrs. Colucci has not made a gift to the plaintiff Mr. Polletta, Jr. does not call for the imposition of a constructive trust.
Lastly, the fact that the value of the real estate may be greater than an absolute dollar for dollar quid pro quo, compared to what may have been the equitable value of services rendered and sums which she paid out on behalf of the deceased, does not constitute "unjust enrichment." Mrs. Colucci submitted a claim to the Probate Court dated July 12, 1994 in the amount of $51,342.70 for services rendered and funds expended on behalf of the decedent prior to his death. This claim was filed subsequent to the plaintiff filing the will contest appeal to this court. It was filed upon the advice of her attorney. Although the plaintiff is critical of the fact of filing this claim, it is the proper procedure for one having rendered services or advanced funds to the decedent. See Grant v. Grant, 63 Conn. 530, 543, 546 (1893). The utilizing of this procedure is totally-prudent to preserve a claim in quantum meruit in the event a will contest should CT Page 5495-AAA be eventually determined against the proponent of the will, in cases of this nature.
This court does not decide that claim. That claim of the defendant is not before this court. That is for the probate court. See General Statutes § 45a-367. Grant v. Grant, supra, p. 546. It does, however, indicate that the relationship between Mrs. Colucci and the decedent Mr. Polletta was one of long-standing services and expenditures rendered in a relationship of close friendship and caring. The court also notes that the plaintiff had available to him the same procedure to assert a claim for quantum meruit, alternatively, (and requesting deferral of decision in the probate court), for reimbursement of funds which he claims to have advanced on behalf of the decedent. Grant v. Grant, supra. Such claims do not depend upon a specific contract, and may well be moot in practicality where a claimant, here Ms. Colucci, is ultimately determined to be the sole beneficiary of the estate. See General Statutes § 45a-368. THE COURT FINDS FOR THE DEFENDANT ON THE THIRD COUNT OF THE COMPLAINT.
 IV
Claim for return of funds paid for Use and Occupancy.
The plaintiff claims that he is entitled to the return of the funds which he has paid to the estate, $625.00 per month, by virtue of the order of the Housing Court of July 1, 1994. This court, having declined to order a transfer of the real property to the plaintiff, the court consequently denies this claim for relief by the plaintiff. THE COURT FINDS FOR THE DEFENDANT ON THE FOURTH COUNT OF THE COMPLAINT.
 V
The Fifth Count; a claim for funeral expenses.
The plaintiff claims to have paid the funeral expenses for the decedent in the amount of $4,861.23. The defendant admits, in her post-trial brief, that the claim presented by the plaintiff was for funeral, cemetery and church expenses, and that those claims have not been denied and should be resolved by the estate and the probate court at the appropriate time. CT Page 5495-BBB
General Statutes § 45a-365 provides for the payment of funeral expenses as the first order of priority.; General Statutes § 45a-365 provides for a hearing in the Probate Court to decide any rejected claims. This claim has not been rejected. General Statutes § 45a-360 provides that the claimant may give notice to the fiduciary to act upon a claim which has been presented. If the fiduciary fails to reject, allow or pay the claim within thirty days from the date ofsuch notice the claim is deemed to have been rejected on the expiration of the thirty-day notice.
The plaintiff has not alleged that he has given the executrix the requisite thirty-day notice so as to constitute a determination of rejection by non-action of the fiduciary to be followed by the activating of the appeals process within the Probate Court. The defendant admits that the claim is still pending in the Probate Court. The claim asserted in this count is at best premature, and additionally it implicates this court's subject matter jurisdiction. SeeBergin v. Bergin, 3 Conn. App. 566, 568 (1985); certification denied, 196 Conn. 806. Hence the relief requested under the fifth count of the complaint cannot be granted by the court.
The court enters judgment for the defendant on Counts One, Two, Three and Four of the complaint. The court dismisses the fifth count of the complaint as being premature and not within the jurisdiction of this court, leaving the plaintiff to pursue his remedies for funeral expenses in the Probate Court.
L. Paul Sullivan, J.