[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff is Robert Bazyk (hereinafter "Bazyk"). The defendants are John H. Barter (hereinafter "Barter"), National Emergency Service of New England, a Connecticut corporation with its principal place of business in the town of West Hartford (hereinafter "NES") and The Alarm Company, a Connecticut corporation with its principal place of business in the town of West Hartford (hereinafter "TAC"). CT Page 195-A
Bazyk, in his second amended complaint alleged that he is a shareholder of NES, holding 25% of its voting stock and that the defendant Barter is the majority stockholder of NES holding 75% of its voting stock.
Bazyk was employed by NES from 1980 until 1984. During the course of his employment, Barter issued 25 shares of NES to Bazyk. On August 7, 1984, Bazyk notified Barter that he was leaving his employment with NES on August 20, 1984 for a position with AA Electronic Security Engineering, Inc., a Connecticut corporation competing with NES (hereinafter "AA"). Barter and Bazyk entered into negotiations for the buy-back by Barter of Bazyk's 25 shares of NES stock. A "Letter of Intent" signed by both Bazyk and Barter and witnessed by two witnesses was entered into on August 17, 1984. (Plaintiff's Exhibit 2, a copy of which is attached hereto).
Bazyk and Barter continued to negotiate until December, 1984 at which time talks were broken off when CT Page 195-B Barter learned that Bazyk was soliciting his former NES customers to transfer their business to Bazyk's new employer, (see Defendant's Exhibit "BB"). In January, 1985 at a corporate meeting of NES attended by Barter and his wife, but not by Bazyk, who was not notified of the meeting, it was voted to dissolve the corporation. However, the legal procedure for dissolving a corporation was not complied with, fees were not paid to the secretary of the state nor were the required forms filed. In 1988 NES was dissolved by action of the secretary of the State.
Bazyk has brought this action in three counts:
 First Count (Breach of fiduciary duty as to Barter)
 Second count (fraud as to all defendants)
 Third count (conversion as to all defendants) CT Page 195-C
Bazyk, pursuant to Connecticut General Statutes Sec. 33-382(b), alleges in his complaint that Barter had transferred all NES assets to TAC, that Barter as majority shareholder in NES breached his fiduciary duty to Bazyk as the minority stockholder, that Barter failed to keep and maintain corporate records, used corporate assets and funds for his personal advantage, failed to hold and/or give proper notice of corporate meetings and failed to protect the assets and shareholders of NES and TAC.
Bazyk in his prayers for relief asks the court to order:
 1. A decree dissolving the corporation.
 2. That Bazyk be appointed receiver of NES and TAC pursuant to Connecticut General Statutes Sec. CT Page 195-D 33-383(c) to facilitate sale of the corporate assets.
 3. That Bazyk and/or his counsel, be allowed, pursuant to Connecticut General Statutes Sec. 33-334(c), to examine and make copies of NES and TAC books, including but not limited to accounts, record of shareholders and minutes of meetings of the board of directors, if any.
 4. That NES and TAC assets be distributed between the shareholders.
5. Attorney's fees. CT Page 195-E
6. Money damages; and
 7. such other relief as the court deems just and equitable.
Barter in his answer denies most of the allegations of the complaint or leaves the plaintiff to his proof. He also pleaded nine special defenses, and six counts in his counterclaim.
The remedy sought by Bazyk as an allegedly injured stockholder is an equitable one. Mills v. Tiffany's Inc.,123 Conn. 631, 643. The doctrine of "clean hands" provides that for a complainant to show that he is entitled to the benefits of equity, he must establish that he comes into court with "clean hands." Pappas v. Pappas, 164 Conn. 242,246, 320 A.2d 809 (1973).
The doctrine of clean hands is based upon the notion CT Page 195-F that "[o]ne who seeks equity must also do equity and expect that equity will be done for all." LaCroix v. LaCroix,189 Conn. 685, 689, 457 A.2d 1076 (1983); see Gelinas v. WestHartford, 2256 Conn. 575, 626 A.2d 259 (1993). "One who seeks to prove that he is entitled to the benefit of equity must first come before the court with clean hands. Cohenv. Cohen, 182 Conn. 193, 201, 438 A.2d 55 (1990); seeMurphy v. Dantowitz, 142 Conn. 320, 326, 114 A.2d 194
1955). "This equitable doctrine is a legal euphemism which expressed the principle that where a party comes into equity for relief he must show his conduct has been fair, equitable and honest as to the particular controversy in issue. (Citations omitted.) Collens v. New Canaan WaterCo., 155 Conn. 477, 492 234 A.2d 825 (1967).
"The doctrine is not one of absolutes; DeCecco v.Beach, 174 Conn. 29, 35, 381 A.2d 543 (1977); it has its limitations and is not a judicial straightjacket." (Citations omitted.) Cohen v. Cohen, supra, 182 Conn. 201. The clean hands doctrine
only applies to the particular transaction under CT Page 195-G consideration, for the court will not go outside the case for the purpose of examining the conduct of the complainant in other matters or question his general character for fair dealing. The wrong must be done to the defendant himself and must be in regard to the matter in litigation.
(Citation omitted; internal quotation marks omitted.)Lyman v. Lyman, 90 Conn. 399, 406, 97 A. 312 (1916); seeOrsi v. Orsi, 125 Conn. 66, 70-71, 3 A.2d 306 (1938).
"The party seeking to invoke the clean hands doctrine to bar equitable relief must show that his opponent engaged in wilful misconduct with regard to the matter in litigation." Polverari v. Peatt, 29 Conn. App. 191, 202,614 A.2d 484 (1992), citing DeCecco v. Beach, 174 Conn. 29,35, 381 A.2d 543 (1977). The party asserting the doctrine must show that it has been "prejudiced or harmed . . . by the alleged misconduct of his opponents." (Citations omitted; footnote omitted.) Cohen v. Cohen, supra, CT Page 195-H182 Conn. 193; see Bouton v. Beers, 78 Conn. 414, 416,62 A. 619 (1905). "Under this maxim, any wilful act in regard to the matter in litigation, which would be condemned and pronounced wrongful by honest and fair-minded men, will be sufficient to make the hands of the applicant unclean." (Citations omitted; internal quotation marks omitted.)Boretz v. Segar, 124 Conn. 324 Conn. 320, 324,199 A.2d 548 (1938).
"The trial court enjoys broad discretion in determining whether the promotion of public policy and the preservation of the courts' integrity dictate that the clean hands doctrine be invoked." (Citation omitted.)Polverari v. Peatt, supra, 29 Conn. App. 202 . . . . The application of the equitable maxim rests in the sound discretion of the trial court and generally should not be employed to insulate the party who asserts it from the consequences of his own wrongdoing." Cohen v. Cohen,
supra, 182 Conn. 201, citing DeCecco v. Beach, supra,174 Conn. 35 (1977).
The facts produced by both parties, Bazyk and Barter, CT Page 195-I at the trial must be examined to determine whether either party comes to court with clean hands.
NES was in the security business. It installed security systems in both private homes and in business enterprises. After the equipment was installed in the customer's premises, (NES) contracted with the customer to monitor the system and when it was activated, the monitor notified the authorities. Each customer paid NES approximately $19.00 per month for the monitoring. NES originally farmed out the monitoring service to an out-of-state company for $5.00 per month per account. After Bazyk became an employee and a stockholder in (NES), he cancelled the contract with the out-of-state company and negotiated and transferred the monitoring part of the business to AA). AA as well as installing security systems also monitored for its own clients as well as for competitors' clients.
The court finds that Bazyk did not have clean hands for the following reasons:
1. The contract Bazyk negotiated with (AA) to CT Page 195-J monitor each (NES) account for $5.00 per month per account provided that Bazyk was to receive a $2.00 per month per account kickback. This was accomplished without the knowledge or permission of Barter. Bazyk received many thousands of dollars from the deception.
2. Bazyk attempted to arrange kickbacks from other NES suppliers.
3. Bazyk used the NES trade card to purchase personal items such as sporting goods equipment.
4. Prior to leaving NES for employment with AA in August 1984, Bazyk retained an attorney to draft his employment agreement with (AA) and paid the attorney's fee with the NES trade card.
5. The employment contract with AA provided that Bazyk would continue to receive the $2.00 kickback for each (NES) account monitored by AA.
Because Bazyk did not come to court with clean hands, CT Page 195-K judgment may enter for the defendants on all equitable issues. Therefore all the special defenses pleaded by the defendants are moot.
Barter's conduct in this matter is not beyond reproach.
1. When negotiations for the buy-back of Bazyk's 25 shares of NES stock failed, a meeting of NES was held for the purpose of dissolving the corporation. Notice of this meeting was not sent to Bazyk. At the meeting held in January 1985, it was voted to dissolve NES.
2. However, NES was not legally dissolved by this action as the required forms were not filed with the secretary of the state. In 1988, NES was dissolved by action of the secretary of the state.
3. Meanwhile Barter transferred all the assets of NES to an unincorporated entity and then to TAC for the purpose of denying to Bazyk his share of the assets of NES. CT Page 195-L
The defendants have filed 6 counterclaims.
First Count — Violation of the Connecticut Uniform Trade Secrets Act, Conn. General Statutes Sec. 35-31
et seq.
Second Count — Conversion.
Third Count — Violation of the Connecticut Unfair Trade Practices Act, Connecticut General Statutes Sec. 42-110a et seq.
Fourth Count — Constructive fraud.
Fifth Count — Tortious interference.
Sixth Count — Breach of contract.
The first, second and fifth counts are barred by the three-year statute of limitations. The sixth count is barred by the six-year statute of limitations. CT Page 195-M
The third count pleads a violation of CUTPA. A CUTPA claim does not cover disputes "arising out of the employment relationship. " Lodiduce v. Fleet Bank, N.A. etal., 9 CSR 136 (February 14, 1994). "Although an employer may engage employees for the purpose of promoting trade or commerce, the actual employment relationship is not itself trade or commerce for the purposes of CUTPA." Bannerjer v.Roberts, 641 F. Sup. 1093, 1108 (D.Conn. 1986) CUTPA does not apply in this case.
The fourth count of the counterclaim involves fraud. The elements of fraud are spelled out in Miller v. Appleby,183 Conn. 51 (1981). "The essential elements of an action in fraud . . . are: (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury." The defendants have failed to prove by clear, precise and unequivocal evidence the fourth count of their counterclaim. Alaimo v.CT Page 195-NRoyer, 188 Conn. 36, 39 (1982).
For the above-mentioned reasons, judgment may enter for Bazyk on all six counts of the defendants' counterclaims.
In addition to his equitable claims, the plaintiff, Bazyk, has asked for money damages. It is undisputed that Barter issued Bazyk 25 shares of stock in NES. It is undisputed that when Bazyk left his employment in NES that he and Barter negotiated for the buy-back of the 25 shares.
The letter of intent attached hereto indicates it was the intent of both Bazyk and Barter that Barter buy back the 25 NES shares for their August 30, 1984 value.
Two expert witnesses testified as to the value of 25 shares of NES as of August 30, 1984. The more credible witness, Steven Miller, opined that on that date the shares had a value of $16,992.00.
Judgment may enter for the plaintiff for $16,992.00 CT Page 195-O plus costs.
Harold M. Missal State Judge Referee Enclosure
EXHIBIT A
LETTER OF INTENT
We the undersigned mutually agree that on or before August 30, 1984 all common shares of National Emergency Service of New England Inc. presently owned by Robert J. Bazyk will be sold and ownership transferred for consideration to be determined at that time.
Robert J. Bazyk
John H. Barter CT Page 195-P